IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| LONNIE BILLARD,<br><br>*Plaintiff*,<br><br>v.<br><br>CHARLOTTE CATHOLIC HIGH SCHOOL, MECKLENBURG AREA CATHOLIC SCHOOLS, and ROMAN CATHOLIC DIOCESE OF CHARLOTTE<br><br>*Defendants*. | Civil Action No. 3:17-cv-0011<br><br>**COMPLAINT** |

## NATURE OF THE ACTION

This is an employment discrimination lawsuit between Plaintiff Lonnie Billard ("Plaintiff") and Defendants Charlotte Catholic High School ("CCHS"), Mecklenburg Area Catholic Schools ("MACS"), and Roman Catholic Diocese of Charlotte ("Diocese") (collectively, "Defendants"). Plaintiff worked for more than 13 years as a teacher at CCHS, first as a full-time English and Theater teacher, and later as a regular substitute teacher. In the Spring of 2012 Plaintiff was named Teacher of the Year. In October 2014, Plaintiff married his same-sex partner of more than a dozen years. He announced the marriage on Facebook on October 25, 2014.

Plaintiff learned that he had been fired from his regular substitute teaching job at Christmas dinner, on December 25, 2014. According to the CCHS Assistant Principal, the Diocese ordered CCHS to terminate Plaintiff's employment because of his marriage announcement. A spokesperson for the Diocese publicly confirmed that this was the reason for Plaintiff's firing, stating that continuing to employ Plaintiff would be "legitimating that relationship." Accordingly, Defendants discriminated against Plaintiff because of his sex, in

violation of Title VII of the Civil Rights Act of 1964. Plaintiff seeks declaratory and injunctive relief, damages, and other equitable and legal remedies pursuant to the statute.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to Article III, § 2 of the United States Constitution; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended ("Title VII"); and 28 U.S.C. §§ 1331 and 1343.

2. Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

3. Venue is proper in this Court under 28 U.S.C. § 1391 and 42 U.S.C. § 2000e-5(f)(3) because the parties reside in this District, and the unlawful practices complained of occurred within this District.

## PARTIES

4. Plaintiff lives in Charlotte, North Carolina. At all times relevant to this Complaint, he was an employee, as that term is defined in 42 U.S.C. § 2000e(f), of Defendants.

5. Defendant Charlotte Catholic High School ("CCHS") is a co-educational parochial school of approximately 1,400 students in grades 9 through 12. Its principal place of business is in Charlotte, North Carolina. CCHS is an employer within the meaning of 42 U.S.C. § 2000e(b).

6. Defendant Mecklenburg Area Catholic Schools ("MACS") is a centralized, regional system parochial schools in the Charlotte area, including CCHS and eight other schools that serve pre-kindergarten through twelfth grade. It has direct supervisory control over the administration at CCHS. Its principal place of business is in Charlotte, North Carolina. MACS is an employer within the meaning of 42 U.S.C. § 2000e(b).

7. Defendant Roman Catholic Diocese of Charlotte (the "Diocese,") is an unincorporated religious association with its principal place of business in Charlotte, North Carolina. The Diocese is an employer within the meaning of 42 U.S.C. § 2000e(b).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

8. On May 21, 2015, Plaintiff filed timely charges of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that Defendants violated Title VII's prohibition on sex discrimination when they terminated him. The EEOC issued Notices of Right to Sue on November 30, 2016. (Exhibits A, B and C) This action was filed within 90 days of the Notices' receipt, as required by Title VII.

9. All administrative prerequisites to the filing of this suit have been met.

## FACTS

10. Plaintiff graduated from Central Missouri State University (now Central Missouri University) with a Bachelor of Science in Speech Pathology and Education. Earlier in his career, Plaintiff had spent roughly ten years as a full-time teacher at various grade levels at other schools. Prior to beginning his employment with Defendants, Plaintiff worked for more than a decade as a corporate executive with Barnett Bank and Bank of America.

11. In the Fall of 2000, Plaintiff spent three months working at CCHS as a substitute English teacher.

12. Plaintiff initially sought temporary work as a substitute teacher because he was worried that he would not be able to connect with high school students at his age.

13. Plaintiff, however, fell in love with teaching at CCHS. He realized he wanted to work there full-time.

14. In the Spring of 2001, Plaintiff applied for a full-time teaching position at CCHS. He was hired shortly thereafter.

15. In the Fall of 2001, Plaintiff started working as a full-time English and Public Speaking teacher at CCHS.

16. In the Fall of 2002, Plaintiff switched roles after CCHS appointed him to be its Theater teacher in the Fine Arts Department. In that role, he taught several drama courses and directed school plays. Plaintiff continued in this position until his retirement from full-time teaching in the Fall of 2012.

17. In the Spring of 2012, Plaintiff won the CCHS Teacher of the Year award, which came with a $10,000 cash prize. Teachers are nominated for the award by their students. Then-principal Jerry Healy told Plaintiff that he was the only teacher who had been nominated for the award every year since its inception in 2005.

18. In the Fall of 2012, at the age of 66, Plaintiff retired from teaching full-time. After his retirement from full-time teaching, Plaintiff continued working at CCHS as regular substitute teacher.

19. Like other substitute teachers, and pursuant to Defendants' policy, Plaintiff did not sign a contract for employment with CCHS. Instead, Plaintiff was included on a list of substitute teachers who were regularly called in for assignments when full-time teachers became unavailable. On information and belief, the Diocese's human resources office classifies substitute teachers as temporary employees.

20. Each CCHS school year consists of approximately 177 student days, or roughly 35 weeks. During the 2012-13 school year, Plaintiff worked for approximately 15 weeks. During the 2013-14 school year, he worked for approximately 13 weeks. During the Fall

4

semester of the 2014-15 school year, prior to his termination, Plaintiff worked for approximately 8 weeks.

21. At all times during his employment by Defendants, Plaintiff performed well. During his tenure as a full-time teacher, he regularly received positive performance evaluations. As a substitute teacher, he did not receive performance evaluations.

22. Plaintiff came out as gay to his family and close friends in 1995. In 2001, Plaintiff began a romantic relationship with his now-husband, Richard Donham ("Donham"), and in 2002 they began living together as a couple. Donham regularly accompanied Plaintiff to CCHS functions, and their relationship was common knowledge among the school's students, parents, alumni, staff, and administration. Plaintiff also listed Donham as his emergency contact on his employment forms. Plaintiff and Donham began discussing marriage after the Supreme Court's decision in *United States v. Windsor*, 133 S. Ct. 2675 (2013). In October 2014, after marriage for same-sex couples was legalized in North Carolina, they decided to get married the following Spring.

23. On October 25, 2014, Plaintiff wrote a Facebook post announcing his upcoming wedding. The post read: "Everyone sing along…. 'Goin' to the chapel and we're gonna' get ma-a-aried. Goin' to the chapel and we're gonna' get maa-aa-ried'. Yes, I'm finally going to make an honest (at least legal) man out of Rich. We will be married on May 2, 2015… details to follow. I cannot believe that I am saying this or that it is even possible. I thank all the courageous people who had more guts than I who refused to back down and accept anything but 'equal'. Ps. If you don't agree with this… keep it to yourself. You never asked my opinion about your personal life and I am not asking yours."

5

24. A number of Plaintiff's Facebook friends responded to his post to congratulate him on his upcoming marriage. Plaintiff received no negative feedback about the posting, on Facebook or elsewhere.

25. Two months later, on Christmas Day 2014, Plaintiff learned that his employment as a substitute teacher at CCHS had been terminated. He and Donham were at a Christmas dinner with CCHS alumni and employees. Plaintiff mentioned to a colleague that he had not yet heard from CCHS about a substitute teaching assignment for January that he routinely performed after the Christmas break. Plaintiff's colleague told him that CCHS Assistant Principal Steve Carpenter ("Carpenter") had informed her that Plaintiff could no longer serve as a substitute at CCHS.

26. On December 30, 2014, Plaintiff texted Carpenter to ask about his status. A few minutes later, Carpenter telephoned Plaintiff. Carpenter said that the Diocese had instructed him that the school could no longer employ Plaintiff because he announced on Facebook his intention to marry a same-sex partner.

27. On January 9, 2015, the Diocese's Director of Communications, David Hains ("Hains"), stated publicly that Plaintiff was terminated for "going on Facebook, entering into a same-sex relationship, and saying it in a very public way that he does not agree with the teachings of the Catholic Church." Continuing to employ Plaintiff, Hains stated, "would be legitimating that relationship. The church would be saying it's OK, and it's not."

28. In late January 2015, Plaintiff wrote Janice Ritter, the Diocese's Superintendent of Catholic Schools, asking for official confirmation that his employment had been terminated. To date, he has received no response. He has not been offered another teaching assignment at CCHS.

## CAUSE OF ACTION

29. Plaintiff realleges and incorporates by reference, as if fully set forth herein, the allegations of paragraphs 1 through 28.

30. Plaintiff was highly qualified for the position of substitute teacher, as reflected in part by his 2012 Teacher of the Year Award.

31. Defendants terminated Plaintiff because he announced his marriage to a same-sex partner.

32. Defendants terminated Plaintiff because he is a man who intended to, and did, marry another man.

33. Defendants terminated Plaintiff because he associated with another man.

34. Defendants terminated Plaintiff because he does not conform to sex-based stereotypes associated with men in our society.

35. Defendants discriminated against Plaintiff on the basis of sex, in violation of Title VII of the Civil Rights Act of 1964.

36. Defendants' unlawful employment actions were intentional.

37. Defendants' unlawful employment actions were taken either with malice or with reckless indifference to Plaintiff's rights under the law.

38. As a result of Defendants' unlawful employment actions, Plaintiff has been denied compensation and benefits which he would have otherwise received and has suffered emotional distress and other compensable damages.

## PRAYER FOR RELIEF

For the foregoing reasons, Plaintiff respectfully requests that the Court grant the following relief:

- A. Declaratory relief, including but not limited to a declaration that Defendants violated Title VII;
- B. Appropriate injunctive relief, including but not limited to reinstatement and an order restraining Defendants from engaging in further discriminatory conduct of the types of which Plaintiff complains herein;
- C. Back pay and benefits in amounts to be determined at trial;
- D. In the event reinstatement is not granted, front pay;
- E. Compensatory and consequential damages, including for emotional distress;
- F. Punitive damages;
- G. Pre-judgment and post-judgment interest at the highest lawful rate;
- H. Costs incurred, including reasonable attorneys' fees to the extent allowable by law;
- I. Such other relief as the Court deems just and proper.

Dated: January 11, 2017

Respectfully submitted,

/s/ **S. Luke Largess**
S. Luke Largess (NC Bar # 17486)
Tin Fulton Walker & Owen PLLC
301 East Park Avenue
Charlotte, NC 28202
Telephone: (704) 338-1220
Facsimile: (704) 338-1312
Email: llargess@tinfulton.com

Christopher Brook (NC Bar #33838)
American Civil Liberties Union
 of North Carolina Legal Foundation
PO Box 28004
Raleigh, NC 27611
Telephone: (919) 834-3466
Facsimile: (866) 511-1344
cbrook@acluofnc.org

Brian Hauss*
Elizabeth O. Gill*
American Civil Liberties Union
 Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2604
Facsimile: (212) 549-2652
bhauss@aclu.org
egill@aclunc.org

**Pro Hac Vice* Applications Forthcoming

*Counsel for Plaintiff*