LONNIE BILLARD,

      Plaintiff,

v.


CHARLOTTE CATHOLIC HIGH
SCHOOL, MECKLENBURG AREA
CATHOLIC SCHOOLS, and ROMAN
CATHOLIC DIOCESE OF CHARLOTTE,

      Defendants.

## DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

When the Supreme Court recognized a constitutional right to same-sex marriage in

*Obergefell v. Hodges*, it made clear that recognition of this new right would not end religious

organizations' ability to teach and practice the Christian view of human sexuality, explaining:

> [I]t must be emphasized that religions, and those who adhere to religious doctrines, may continue to advocate with utmost, sincere conviction that, by divine precepts, same-sex marriage should not be condoned. The First Amendment ensures that religious organizations and persons are given proper protection as they seek to teach the principles that are so fulfilling and so central to their lives and faiths, and to their own deep aspirations to continue the family structure they have long revered.

*Obergefell v. Hodges*, 135 S. Ct. 2584, 2607 (2015).

Billard asks the Court to ignore this promise. Rather than recognizing Defendants'

constitutional and statutory rights to practice their sincerely-held religious beliefs, Billard asks

the Court to force Defendants to employ persons who publicly oppose their message and

mission, and thereby violate their religious beliefs regarding marriage – which Defendants

believe to be divinely revealed – and to impose financial penalties on them for their refusal to do so.  The Court should decline this invitation.

## SUMMARY OF ARGUMENT

First, Billard's Title VII claim fails because binding Fourth Circuit precedent holds that sexual orientation discrimination claims are not actionable under Title VII.  *Hopkins v. Baltimore Gas & Elec. Co.*, 77 F.3d 745 (4th Cir. 1996).  Even if such claims were proper, there is no evidence that sex or sexual orientation was a motivating factor in Defendants' decision to end Billard's employment.  Instead, the undisputed evidence demonstrates that Defendants released Billard because of his conduct, which advocated in favor of same-sex marriage in violation of the Church's beliefs and teaching on marriage, ***and*** that Defendants would have taken the same action against a female or heterosexual employee.  *See Hill v. Lockheed Martin Logs. Mgmt.*, 354 F.3d 277 (4th Cir. 2004).

Second, Title VII's exemptions for religious organizations apply and bar Billard's claims, as Defendants' decision to release Billard was based on religious preference – specifically, the fundamental moral teachings of the Catholic Church, which recognizes marriage only between one man and one woman.  *See* 42 U.S.C. §§2000e-1(a) & (e)(2); *see also Little v. Wuerl*, 929 F.2d 944 (3d Cir. 1991).

Third, contrary to Billard's assertion, the First Amendment protects Defendants here.  Enforcing Title VII in the manner Billard seeks would violate Defendants' rights to church autonomy and associational freedom guarded by the First Amendment.  *See Boy Scouts of America v. Dale*, 530 U.S. 640, 647 (2000); *Bryce v. Episcopal Church in the Diocese of Colorado* 289 F.3d 648, 657 (10th Cir. 2002).  Additionally, Billard's claim is barred by the Religious Freedom Restoration Act ("RFRA").  Billard's contention that RFRA is limited to

suits where the government is a party ignores the statute's text, Congress's explicit intent, and would lead to inconsistent results. Moreover, Billard has not and cannot point to any evidence that enforcement of Title VII in this case would satisfy RFRA's "least restrictive means" test. *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 2760 (2014). Accordingly, the Court should deny summary judgment in favor of Billard and grant summary judgment to Defendants.

## ARGUMENT[1]

### I.     Billard's Title VII Claim Fails.

#### A.     Billard's Claim For Sexual Orientation Discrimination Is Not Actionable.

Billard testified that his claim is based on his ***sexual orientation***. Deposition of Lonnie Billard ("Billard Dep.") 176 ("I was treated differently ***because I'm gay***.").[2] His brief acknowledges that this is the nature of his claim. Pl. Br. at 10 (describing termination for same-sex marriage as "sexual orientation discrimination"). Billard cannot sustain a Title VII claim on this basis.

Binding Fourth Circuit precedent holds that Title VII does not authorize claims for sexual orientation discrimination. *See e.g., Hopkins v. Baltimore Gas & Elec. Co.*, 77 F.3d 745, 751-52 (4th Cir. 1996)("Title VII does not prohibit conduct based on an employee's sexual orientation."); *Wrightson v. Pizza Hut of America, Inc.*, 99 F.3d 138, 143 (4th Cir. 1996); *Hinton v. Virginia Union Univ.*, 185 F. Supp. 3d 807, 814-15 (E.D. Va. 2016). This Court, too, has dismissed Title VII claims based on sexual orientation. *Thomas v. North Carolina*, No. 3:12-cv-00038-FDW-DCK, 2013 U.S. Dist. LEXIS 19392 (W.D.N.C. Feb. 13, 2013).

---

[1] Defendants adopt the Statement of Facts set forth in their Memorandum of Law in Support of their Motion for Summary Judgment. *See* Doc. No. 30. Defendants dispute some of the facts set forth in Plaintiff's Motion. However, these disputed facts are not material and do not preclude the Court granting summary judgment in favor of Defendants and denying Billard's Motion.

[2] Defendants rely on record evidence previously submitted to the Court as exhibits to the Appendix filed with their Memorandum of Law in Support of their Motion for Summary Judgment, which is incorporated herein by reference pursuant to Fed. R. Civ. P. 10(c). *See* Doc. No. 31.

Billard cites no Fourth Circuit authority to the contrary, and his attempt to distinguish the Fourth Circuit's clear teaching in *Wrightson* as "dicta" (Pl. Br. at 10-11) is unavailing. *Wrightson* is not the only Fourth Circuit decision recognizing that sexual orientation discrimination is not protected by Title VII. *See e.g., Hopkins*, 77 F.3d at 751-52. Moreover, lower courts in the Fourth Circuit have treated *Wrightson* as binding. *See Hinton*, 185 F. Supp. 3d at 814-15; *Barr v. Virginia Alcohol Bev. Control*, 2017 U.S. Dist. LEXIS 119136 at *10 (E.D. Va. July 28, 2017); *Dawkins v. Porter*, 2013 U.S. Dist. LEXIS 158818 at *6 (M.D.N.C. November 6, 2013).

The Fourth Circuit is hardly alone in this regard. Every other circuit, with the sole (and recent) exception of the Seventh,[3] has consistently held that Title VII does not authorize a cause of action for sexual orientation discrimination. *See Higgins v. New Balance Athletic Shoe, Inc*., 194 F.3d 252, 259 (1st Cir. 1999); *Dawson v. Bumble & Bumble*, 398 F.3d 211, 218 (2d Cir. 2005); *Kay v. Independence Blue Cross*, 142 Fed. App'x. 48, 50 (3d Cir. 2005); *Brandon v. Sage Corp*., 808 F.3d 266, 270, n.2 (5th Cir. 2015); *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 762 (6th Cir. 2006)*; Klein v. McGowan*, 198 F.3d 705, 710 (8th Cir. 1999); *DeSantis v. Pac. Tel. & Tel. Co.*, 608 F.2d 327, 332 (9th Cir. 1989); *Larson v. United Air Lines*, 482 Fed. App'x. 344 (10th Cir. 2012); *Evans v. Ga. Reg'l Hosp*., 850 F.3d 1248, 1257 (11th Cir. 2017).

These decisions accord with the plain text of Title VII, which does not prohibit discrimination on the basis of sexual orientation. *See* 42 U.S.C. § 2000e-2(a)(1). Courts have routinely rejected invitations to judicially amend Title VII's statutory text, emphasizing that Congress evidenced no intent to authorize claims for sexual orientation discrimination – nor any intent other than to restrict the term "sex" to its traditional meaning (*i.e*., male and female) –

---

[3] Prior to its decision this year in *Hively v. Ivy Tech Comm. College of Indiana*, 853 F.3d 339, 351 (7th Cir. 2017), the Seventh Circuit also rejected sexual orientation discrimination claims under Title VII.

when it outlawed sex-based discrimination.  *See Holloway v. Arthur Anderson & Co.*, 566 F.2d 659, 662 (9th Cir. 1997).  Indeed, Congress has prohibited discrimination or violence based on sexual orientation in other legislation (the Violence Against Women Act and the federal Hate Crimes Act), but rejected multiple bills to extend Title VII to cover sexual orientation discrimination claims.  *Hinton,* 185 F. Supp. 3d at 814-15; *Kiley v. American Soc'y for the Prevention of Cruelty to Animals*, 296 F. App'x. 107, 109 (2d Cir. 2008); 34 U.S.C. § 12361; 18 U.S.C. § 249.  Respectfully, it is not for this Court to amend Title VII in a manner explicitly rejected by Congress.

Billard's reliance on a Washington district court decision and an EEOC administrative decision is misplaced.  *See Hall v. BNSF Railway Co.*, 2014 U.S. Dist. LEXIS 132878 (W.D. Wash. Sept. 22, 2014); *Baldwin v. Foxx*, EEOC Doc 0120133080 (2015).  Not only are these decisions not binding on this Court, but *Hall* involved a claim for sex discrimination, not sexual orientation discrimination, and was decided at the motion to dismiss stage with the Court expressly declining to comment on the validity of the plaintiff's claim.  *Hall,* 2014 U.S. Dist. LEXIS 132878 at *12.  The EEOC administrative decision in *Foxx* is directly contrary to binding Fourth Circuit authority, and (appropriately) has not been followed by district courts in this circuit.  *See, e.g. Hinton*, 185 F. Supp. 3d at 815-16 (stating that *Foxx* has not displaced *Wrightson* in this Circuit).

As a last ditch effort to save his claim, Billard cites to a string of cases concerning race discrimination.  Pl. Br. 9-10.  These cases are also inapplicable, because the Fourth Circuit has never recognized sexual orientation discrimination claims under Title VII based on this line of race discrimination cases or reasoning.

Accordingly, Billard's Motion for Summary Judgment should be denied.

**B.      There is No Evidence that Defendants Released Billard "Because of Sex."**

Billard cannot demonstrate that sex or sexual orientation was a motivating factor in Defendants' decision to release him from employment.  Accordingly, his claim fails.  *Williams v. Giant Food Inc*., 370 F.3d 423, 430 (4th Cir. 2004); *Wilson v. Circuit City Stores*, No. 94-2249, 1996 U.S. App. LEXIS 6080 (4th Cir. Apr. 1, 1996).

There is no evidence that Defendants released Billard from his employment because he is a male or is gay.  It is Billard's contention that members of CCHS's administration, including Healy and Carpenter, were aware of his sexual orientation (and of course his sex) years before he announced his engagement, yet took no action in response.  Billard Dep. 253.  If true, these facts alone demonstrate that Billard's sex or sexual orientation was not a reason Billard was released – indeed, if those were the reasons, Billard would have been released a long time ago.

Rather, it is undisputed that Defendants released Billard because of his conduct which advocated in opposition to the Church's teachings concerning marriage when he announced his same-sex marriage on Facebook.  Deposition of Kurt Telford 7-8; Deposition of Steve Carpenter 32.  Defendants' actions in doing so are consistent with similar action taken against other employees in the past in response to conduct which advocated in opposition to Catholicism's fundamental moral tenets.  Declaration of Janice Ritter ¶ 23.  These other situations have involved both male and female, as well as heterosexual, employees.  *Id*. ¶ 23.  The evidence is undisputed that Defendants would have taken the same action against Billard if he were *female* or *heterosexual* and had advocated on Facebook for same-sex marriage in contradiction to Catholic teaching.  *Id*. ¶¶ 23-24.  Thus, there is no evidence that either Billard's sex or his sexual orientation was a motivating factor in the decision to release him, and his claim fails.  *See e.g., Maguire*, 814 F.2d at 1217-18 (where Catholic-affiliated university would have terminated male

employee for advocacy for abortion, terminated female professor's claim failed); *see Boyd v. Harding Academy of Memphis*, 88 F.3d 410, 413 (6th Cir. 1996)(affirming dismissal of pregnancy discrimination claim where plaintiff was terminated for extramarital sex in violation of Catholic moral tenets).

### C. Billard Cannot Sustain A Gender-Nonconformity and/or Sex Stereotyping Claim.

Billard's gender nonconformity claim is merely a claim for sexual orientation discrimination and not actionable under Title VII.

Gender-nonconformity and/or sex stereotyping theories originated with *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S. Ct. 1775 (1989). There, the plaintiff asserted that she had been denied partnership on the basis of her sex because she did not fit the partners' ideas of how a female employee should look and act, as she was viewed as "macho," and could have improved her chances for partnership if she would "walk more femininely, talk more femininely, dress more femininely, wear make-up, have her hair styled, and wear jewelry." *Id*. at 235. The Court found that these types of comments constituted "sex stereotyping" sufficient to state a sex discrimination claim under Title VII. *Id*.

There are no facts similar to those present in *Hopkins* here, as Billard himself concedes he does not fit stereotypes associated with homosexual men. Billard Dep. 83 & 244-45. Billard's only support for his gender nonconformity claim is that "I do not conform to the typical heterosexual relationship," *see* Billard Dep. 279, which is a claim based purely on sexual orientation and not the basis of the *Hopkins* holding.

Moreover, the Fourth Circuit has not recognized sexual orientation discrimination claims using the gender-nonconformity theory articulated in *Hopkins*. While Billard cites to a single circuit court allowing this type of gamesmanship, *see Hiveley v. Ivey Tech Cmty. Coll.*, 853 F.3d

339 (7th Cir. 2017), many other circuits have rejected efforts by plaintiffs to use a *Hopkins*-type claim to improperly bootstrap protections for sexual orientation into Title VII. *See Dawson v. Bumble & Bumble*, 398 F.3d 211, 218 (2d Cir. 2005); *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757 (6th Cir. 2006).

In *Vickers*, for example, the plaintiff asserted a sex-stereotyping theory, alleging that his sexual practices (whether real or perceived as homosexual by his coworkers), did not conform to traditional male stereotypes. *Id*. at 762. Affirming summary judgment for the employer, the Sixth Circuit stated that although the plaintiff declined to reveal his sexual orientation, his claim was an effort to inappropriately "bootstrap" a sexual orientation discrimination claim into Title VII. *Id*. at 764 (*citing Dawson*, 398 F.3d at 211).

Because Billard is simply using a gender-nonconformity theory to create a sexual orientation discrimination claim which does not exist under Title VII and has not been recognized in the Fourth Circuit, his sex discrimination claim fails as a matter of law.

### D. Title VII's Exemptions Apply.

Billard does not dispute that Defendants are religious entities covered by Title VII's religious organizations' exemptions nor that their decision to release him from employment was based on religious preference – specifically, Defendants' adherence to the fundamental moral teachings of the Catholic Church. Nevertheless, Billard claims that Title VII's exemptions for religious organizations are inapplicable because his claim is styled as one for sex, not religious, discrimination. Pl. Br. 12-13. Billard's assertions are meritless.

The religious exemptions set forth in Section 702 and 703 to Title VII apply to religious organizations like Defendants where the ***reason*** for the ***employment decision*** is based upon religious preference, as is the case here. *See Little v. Wuerl*, 929 F.2d 944, 951 (3d Cir. 1991);

*Hall v. Baptist Memorial Health Care Corp.*, 215 F.3d 618 (6th Cir. 2000); 42 U.S.C. § 2000e-1(a) and 2(e)(2).  Both *Little* and *Hall* are instructive here.  In *Little*, the Third Circuit affirmed summary judgment for a parochial school, holding that the religious exemptions barred a discrimination claim brought by a former Protestant teacher whose contract was not renewed after she married a Catholic without validating her second marriage through proper Catholic procedures.  *Little*, 929 F.2d at 950-51.  In *Hall*, the Sixth Circuit held that Section 702 precluded Title VII claims brought by a lesbian employee of a Baptist college who was asked to resign after she expressed views on homosexuality inconsistent with those of the Southern Baptist Convention.  *Hall*, 215 F.3d at 622-23.

Contrary to Billard's assertions, these exemptions apply where the reason for the employment decision is based on religious preference even when the claims at issue are not styled as claims for religious discrimination, because the purpose of the exemptions is to enable religious organizations to create and maintain communities composed of individuals faithful to their doctrinal practices.  *See Little,* 929 F.2d at 950; *Maguire v. Marquette Univ.*, 627 F. Supp. 1499 (E.D. Wis. 1986)(*affirmed in part and vacated in part on other grounds*, 814 F.2d 1213, 1216 (7th Cir. 1987); *Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc*., 450 F.3d 130, 142 (3d Cir. 2006).

In *Curay-Cramer*, for example, a former teacher at a private Catholic high school was terminated after lending her name to a pro-choice advertisement in support of abortion rights in conflict with Catholic teaching.  *Id*.  The court held that Section 703 exempted the defendant from the plaintiff's sex discrimination claim because the reason for her termination was rooted in religious preference, explaining that "Congress intended the explicit exemptions of Title VII to enable religious organizations to create and maintain communities composed solely of

individuals faithful to their doctrinal practices, whether or not every individual plays a direct role in the organization's religious activities." *Id.* at 141 (*quoting Little*, 929 F.2d at 951).

Likewise, in *Maguire*, the court held that Section 703 defeated the plaintiff's sex discrimination claim against Jesuit Marquette University, which declined to hire her because of her public views on abortion inconsistent with the teachings of the Catholic Church. *Maguire*, 814 F.2d at 1216.

Just as in *Little*, *Hall*, *Maguire*, and *Curay-Cramer*, these exemptions apply to defeat Billard's claim. Billard knew that as an employee of MACS assigned at CCHS he was prohibited from taking a public position or advocating in any way at odds with the teachings of the Catholic faith. Billard Dep. 122-23, 127, 134-46, Ex. 6-11. Billard likewise has always known that Catholicism recognizes marriage exclusively between one man and one woman. *Id.* at 120-21. Defendants released Billard because of his public conduct, which advocated for same-sex marriage, a position which he knew to be contrary to the beliefs of the Catholic Church. Telford Dep. 7-8; Ritter Decl. ¶19.

Billard cites no controlling authority requiring a different result. Indeed, the court in *Rayburn v. Seventh-Day Adventists*, 772 F.2d 1164, 1166 (4th Cir. 1985), although ultimately grounding its decision in the First Amendment, acknowledged that Section 702 applies when the ***reason*** for the employment decision is based on religious preference. *Id.* at 1166-67.

Billard's non-binding decisions from the Ninth and Sixth Circuits are inapposite. *Vigars*, *Fremont*, and *Pacific Press Publishing* all involved markedly different facts from those presented here, as in those cases the employer maintained policies that applied differently to men and women. For example, in *Vigars*, the plaintiff was terminated because she was pregnant but not married. In determining that Title VII applied to her claim, the Court explained that "only

women can ever be fired for being pregnant without the benefit of marriage." *Id.* at 808.  That is

not the issue here, as it is undisputed that Defendants would have taken the same action against

Billard if he were a ***female*** or ***heterosexual*** and advocated on Facebook for same-sex marriage in

contradiction to Catholic teaching.  Ritter Decl. ¶¶ 23-24.  *Boyd v. Harding Academy of*

*Memphis*, 88 F.3d 410 (6th Cir. 1996) likewise offers no support to Billard, because there the

court determined that the defendant school's adherence to its policy prohibiting extramarital

sexual activity offered a legitimate, nondiscriminatory reason for plaintiff's termination.  *Id.* at

412-13.

## II.     Billard's Claim is Barred by the First Amendment.

### A.     Billard's Claim is Barred by the Church Autonomy Doctrine.

The Supreme Court has repeatedly held that the First Amendment requires churches to

have the "power to decide for themselves, free from state interference, matters of church

government as well as those of faith and doctrine." *Kedroff v. St. Nicholas Cathedral of Russian*

*Orthodox Church in N. Am.*, 344 U.S. 94, 116 (1952); *EEOC v. Roman Catholic Diocese of*

*Raleigh, N.C.*, 213 F.3d 795, 800 n.1 (4th Cir. 2000).  *See also Obergefell*, 135 S. Ct. at 2607

(while the Constitution provides a right to same-sex marriage, churches remain free to teach and

practice their faith).

In practice, courts applying this "church autonomy doctrine" have used a two-step

analysis to determine whether the First Amendment bars a claim against a religious organization.

First, the court examines whether "the alleged misconduct is rooted in religious belief." *See*

*Bryce*, 289 F.3d at 657 (citation omitted).  If this threshold requirement is met, courts then

examine whether the dispute "is an ecclesiastical one about discipline, faith, internal

organization, or ecclesiastical rule, custom or law," and not a "purely secular dispute" with a third party." *Id.* (citation omitted).

 The church autonomy doctrine bars Billard's claim.  The undisputed evidence shows that Defendants' "alleged misconduct is rooted in religious belief" – specifically, the fundamental moral teaching of the Catholic Church.  Telford Dep. 7-8; Declaration of Peter Jugis ¶¶15-26; Ritter Decl. ¶ 25.  It is also undisputed that Billard knew that CCHS employees are prohibited from public conduct or advocacy for positions opposed to the fundamental moral tenets of the Catholic faith.  Billard Dep. 122-23, 127, 134-42, Ex. 6-7, 9-11.  Thus, this is not a "purely secular" dispute, but rather one of faith, doctrine and governance. Billard's claim is therefore barred by the Church Autonomy Doctrine.

> **B.**      **Enforcing Title VII On These Facts Would Violate Defendants'**
>               **Associational Freedoms.**

As the Supreme Court has explained, the "freedom of association" guaranteed by the First Amendment "plainly presupposes a freedom not to associate."  *Boy Scouts of Am.,* 530 U.S. at 648 (citation omitted).  When the government adopts a law that forces inclusion of an unwanted person whose presence "affects in a significant way the group's ability to advocate public and private viewpoints," it violates this right unless the law serves a compelling state interest that cannot be achieved through less restrictive means."  *Id.* at 648.  Applying this standard, in *Dale*, the Supreme Court held that forcing the Boy Scouts of America to associate with a gay former assistant scoutmaster would violate the organization's right to free expressive association by "send[ing] a message, both to the youth members and the world, that the Boy Scouts accepts homosexual conduct as a legitimate form of behavior."  *Id.*  at 653.

This case requires the same result.  Defendants are engaged in expressive activities as they actively seek to instill Catholic teachings, including that marriage exists only between a

man and woman, in the students at CCHS.  Forcing Defendants to continue to employ Billard as

a substitute teacher and associate with Billard after his public conduct advocating for same-sex

marriage amounts to compelled expressive association in violation of the First Amendment.

There is no evidence in this case that forcing the Defendants to retain Billard is the least

restrictive means of advancing a compelling governmental interest, and Billard does not contend

there is.  Accordingly, the First Amendment forbids an intrusion on Defendants' right to freedom

of expressive association.

> **C.**      **The First Amendment Applies to Defendants.**

Billard makes the remarkable claim that First Amendment's guarantee of free exercise of

religion offers no protection to religious employers beyond the ministerial exception recognized

by the Supreme Court in *Hosanna Tabor Evangelical Lutheran Church & School v. EEOC*, 565

U.S. 171 (2012).  The Court should reject this argument out of hand.

Billard's argument cannot be squared with the Supreme Court's holding in *Hosanna

Tabor* itself, as the Court plainly reaffirmed the "right to freedom of association . . . enjoyed by

religious and secular groups alike" separate and apart from the ministerial exception.  *Id*. at 189.

Indeed, as the Supreme Court explained, the ministerial exception is simply one specific

application of the broader Church Autonomy Doctrine that focuses on one of the most important

religious dynamics:  the relationship between a church and its ministers.  *Id*. at 186-87.  Nor can

Billard's argument be squared with the holdings in *Bryce* and *Dale* discussed above.

Moreover, the cases upon which Billard relies for his cramped reading of the First

Amendment do not support his argument.  Billard cites *Roman Catholic Diocese of Raleig*h,

*N.C.,* 213 F.3d 795 and the Ninth Circuit's decision in *Bollard v. Cal. Province of the Soc'y of

Jesus*, 196 F.3d 940 (9th Cir. 1999), but nowhere do those cases address the argument – much

less hold – that the only First Amendment defense a religious employer has to a Title VII claim is the ministerial exception. On the contrary, the language Billard quotes merely makes the unremarkable observation that the ***ministerial*** exception applies to ***ministerial*** employees. That the ministerial exception is not at issue in this case tells the Court nothing about whether other First Amendment protections do or do not apply.

**III.     Billard's Claim is Barred by the Religious Freedom Restoration Act.**

**A.     RFRA Applies In This Case.**

Billard's claims are further barred by the RFRA. Billard's argument that RFRA applies only where the government is an actual party to the lawsuit cannot be squared with RFRA's plain language or with Congress' explicit intent in enacting RFRA. Further, adopting Billard's position – at least in cases like this one involving statutes enforceable by the EEOC and in which the EEOC could intervene – would lead to inconsistent results in cases with identical facts.

RFRA provides that "***Government*** shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability." 42 U.S.C. § 2000bb-1(a) (emphasis supplied); *see also Hobby Lobby Stores, Inc.*, 134 S.Ct. at 2761. "Government," as defined by RFRA, means "a branch, department, agency, instrumentality, and official (or other person acting under color of law) of the United States, or of a covered entity." 42 U.S.C. § 2000bb-2(1). This Court is part of the judicial "branch" of the United States, and the District Court judge presiding over this case is an "official" of the United States. Here, Billard asks the Court – *i.e.*, the "government" – to impose liability under Title VII in the form of monetary damages and injunctive relief that would require Defendants to employ persons who publicly oppose Catholic moral teaching. Compl. at 8. Billard does not attempt to argue that the Court can grant this relief without substantially burdening Defendants' exercise of religion, nor can he

seriously do so. *See Burwell*, 134 S.Ct. at 2775-79 (Supreme Court had "little trouble concluding" that HHS contraceptive mandate, which required defendants to violate sincerely held religious beliefs and imposed financial penalties for their failure to do so, substantially burdened religious exercise). Thus, RFRA's plain language applies to the relief Billard seeks here unless RFRA's least–restrictive–means test is satisfied.

The conclusion that RFRA applies in private litigation also flows from Congress' express purpose in enacting the statute. Congress enacted RFRA in 1993 in response to the Supreme Court's decision in *Employment Div. v. Smith*, 494 U.S. 872 (1990), which Congress found "virtually eliminated the requirement that the government justify burdens on religious exercise imposed by laws neutral toward religion." 42 U.S.C. § 2000bb(4); *see also Burwell*, 134 S.Ct. at 2760-61 (discussing the history of RFRA). RFRA was thus enacted to serve the dual purposes of: (1) "guarantee[ing the compelling interest test's] application in *all cases* where free exercise of religion is substantially burdened; and (2)…provid[ing] a claim or defense to persons whose religious exercise is substantially burdened by government." *Id.* at § 2000bb(b) (emphasis added). To achieve these goals, Congress drafted RFRA broadly, requiring the statute be applied "to all Federal law, and the implementation of that law" and including a broad definition of the term "government." 42 U.S.C §§ 2000bb-2(1), 2000bb-3(a).

Further, limiting RFRA's application only to suits in which the government is a formal party to the action would lead to the perverse outcome in employment discrimination cases where RFRA's applicability would turn on whether the EEOC, which has the power to enforce Title VII, elected to bring suit itself or sought to intervene (thus making the government a party to the case), or instead merely issued a notice of right to sue to a private party. Indeed, cases involving identical facts could be decided differently under this standard. Billard's position

would also lead to gamesmanship. For example, in this case, Billard requested that the EEOC issue him a right-to-sue letter, effectively procuring the EEOC's absence as a party to this case. He should not be permitted to deprive Defendants of RFRA's statutory protections in this manner, particularly where the EEOC could still intervene. *See* 42 U.S.C. §§ 2000e–4(g)(6), 2000e–5(f)(1). Indeed, the EEOC has intervened in other cases involving substantially similar claims. *See e.g., Broussard v. First Tower Loan LLC*, No. 2:15-cv-01161-CJB-SS, Doc. No. 70 (E.D. La. Sept. 16, 2015)(granting the EEOC's motion to intervene in a Title VII sex stereotyping theory discrimination suit).

In one of only a few cases to address the question of whether RFRA applies in lawsuits involving private parties, the Second Circuit in *Hankins v. Lyght*, 441 F.3d 96 (2d Cir. 2006) recognized the illogic in denying enforcement of RFRA in cases involving employment statutes enforceable by the EEOC. There, a former clergy member sued the New York Annual Council of United Methodist Church under the Age Discrimination in Employment Act ("ADEA"), which like Title VII, is enforceable by the EEOC, claiming that the church unlawfully forced him into retirement. *Id.* at 99. The Second Circuit noted RFRA's language "seems broad enough" to encompass suits solely between private parties, but clarified that it "need not . . . decide whether the RFRA applies to a federal law enforceable only in private actions between private parties" because the ADEA was also enforceable by the EEOC. *Id.* at 103. Accordingly, the Second Circuit held that a RFRA defense was available because "the substance of the ADEA's prohibitions cannot change depending on whether it is enforced by the EEOC or an aggrieved private party." *Id.*

Billard's cited cases are inapposite, because none of them hold that a RFRA defense is unavailable in a case like the one before the court – where the government could have brought or

seek to intervene in the action.  For example, in *Gen. Conf. Corp. of Seventh-Day Adventists v. McGill*, 617 F.3d 402, 410 (6th Cir. 2010), the defendant attempted to assert a RFRA defense in a trademark infringement lawsuit.  Although the Sixth Circuit concluded that a RFRA defense was unavailable, it declined to follow *Hankins*, in part, because "[t]here is no EEOC-like agency that can bring trademark-enforcement actions."  *Id.* at 411.

In *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826 (9th Cir. 1999), a plaintiff sued a private party and argued that the defendant violated RFRA by following federal law and requiring the plaintiff to fill out his social security number on employment forms.  *Id.* at 829.  Specifically noting that the "[p]laintiff did not bring this action against the federal government," the Ninth Circuit declined to hold the would–be employer liable to the plaintiff under RFRA for following federal law. *Id.* at 829, 843.

Finally, in *Tomic v. Catholic Diocese of Peoria*, 442 F.3d 1036 (7th Cir. 2006) *abrogated by Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 565 U.S. 171, 132 (2012), neither party raised RFRA as a claim or a defense, and the court discussed RFRA only to contrast it with the ministerial exception.  *Id.* at 1042-43.[4]

Billard also attempts to avoid the application of RFRA by noting that RFRA requires the "Government" to demonstrate a compelling interest to justify burdens on religious exercise.  42 U.S.C. § 2000bb-1(b).  This argument confuses the ***evidentiary*** standard that must be met to satisfy an ***exception*** to RFRA with RFRA's ***substantive*** requirements.  The fact that RFRA contains an exception if "Government" satisfies the statutory requirements does change RFRA's substantive mandate that the "Government shall not substantially burden a person's exercise of

---

[4]  Billard also references *Rweyemamu v. Cote*, 520 F.3d 198, 203 n.2 (2d Cir. 2008).  However, the *Rweyemamu* Court never reached the merits of the RFRA defense.  Additionally, one panel of the Second Circuit cannot overrule another.  *See United States v. Jass,* 569 F.3d 47, 58 (2d Cir. 2009).

religion." *Id.* at § 2000bb-1(a). Further, because the EEOC could seek to intervene in this case, the "Government" has the opportunity to attempt to satisfy RFRA's exception if it desires.

Billard also cites § 2000bb–1(c) of RFRA, but fails to quote all the relevant language: "A person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." This is exactly what Defendants are doing here: they have asserted a RFRA violation as a defense in this case and seek relief from imposition of injunctive or monetary penalties by the Court.

The Court should follow RFRA's clear language and Congress's explicit, repeated, and universally recognized desire "to provide very broad protection for religious liberty," *Hobby Lobby Stores, Inc.*, 134 S.Ct. at 2760, and deny Billard's Motion.

**B.      Granting the Relief Billard Seeks Would Substantially Burden Defendants' Religious Exercise.**

Notably, Billard offers no argument that the Court could grant relief without substantially burdening Defendants' religious exercise. *See* 42 U.S.C. § 2000bb–1(a). Defendants articulated those burdens in their Memorandum in Support of their Motion for Summary Judgment, incorporated herein by reference. *See* Def. Br. at 20; *see also Burwell*, 134 S.Ct. at 2775-79.

**C.      The Least Restrictive Means Requirement Is Not Satisfied.**

Under RFRA, a person whose religious exercise is substantially burdened by federal law is entitled to an exemption from the law unless the Government "demonstrates that application of the burden *to the person* – (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." *Hobby Lobby*, 134 S.Ct. at 2767 (citing 42 U.S.C. § 2000bb–1(b)).

Billard makes no effort to explain how RFRA's exacting "to the person" standard applies in this case to these Defendants. Instead, Billard argues generically that "laws prohibiting religious employers from discriminating against non-ministerial employees on the basis of sex satisfy the strict-scrutiny test." Pl. Br. at 15. This type of generic argument fails to even come close to the "to the person" analysis required by RFRA. *See Hobby Lobby Stores, Inc.*, 134 S. Ct. at 2779 (explaining that RFRA requires the court to look "beyond broadly formulated interests and to scrutinize the asserted harm of granting specific exemptions to particular religious claimants").

Billard cites *Dole v. Shenandoah Baptist Church*, 899 F.2d 1389 (4th Cir. 1990) and *Robert v. U.S. Jaycees*, 469 U.S. 609 (1984). However, neither case addressed RFRA or supports Billard's blanket assertions. On the contrary, in both cases the courts concluded that no substantial burden existed (which is not the case here). *See Dole*, 899 F.2d at 1397-98 ("noting that the burden at issue did "not cut the heart of [the church's] beliefs"); *Jaycees*, 468 U.S. at 627 (noting that there was "no basis in the record for concluding that admission of women as full voting members [would] impede the organization's ability to engage in these protected activities or to disseminate its preferred views."). In neither case did the Court broadly state that all laws targeting gender discrimination satisfy strict scrutiny when applied to non-ministerial employees.

Here, as explained in *Hobby Lobby*, *Dole*, and *Jaycess*, Billard's argument must fail because the question is not whether ending sex discrimination generally is a compelling governmental interest. Instead, the question before the Court is whether it has a compelling interest in burdening *these Defendants'* exercise of religion by forcing them to employ individuals who oppose their message and imposing financial penalties on them for adherence to their religious beliefs. Billard simply makes no effort to articulate how these are compelling

19

governmental interests on this record.  Nor does Billard offer any evidence or explanation as to how mandating that the Diocese employ someone who opposes core tenets of Catholic teaching would be the least restrictive means of ending sex discrimination in the workplace.  There is no evidence before the Court on this point.  Absent such a showing, RFRA bars Billard's claim.

## CONCLUSION

Defendants request that the Court deny Billard's motion for summary judgment and enter summary judgment in favor of Defendants on all of Billard's claims.

## CERTIFICATE OF COMPLIANCE

The undersigned counsel certify that the foregoing memorandum does not exceed 6,000 words.

This the 5th day of October 2017.

Respectfully submitted,

/s/ Meredith A. Pinson
John G. McDonald (N.C. Bar No. 23848)
jmcdonald@mcguirewoods.com
Joshua D. Davey (N.C. Bar No. 35246)
jdavey@mcguirewoods.com
Meredith A. Pinson (N.C. Bar No. 39990)
mpinson@mcguirewoods.com
MCGUIREWOODS LLP
201 North Tryon Street, Ste. 3000
Charlotte, North Carolina  28202
704.343.2276
704.444.8753 (Facsimile)

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing with the Clerk of the court using the CM/ECF system, which will send electronic notice to counsel for Plaintiff at the addresses as follows:

Joshua Block
American Civil Liberties Union
125 Broad Street, 18th Floor
New York, NY 10004-2400
Telephone:  212-549-2627
Facsimile:  212-549-2650
Email:  jblock@aclu.org

S. Luke Largess
Tin Fulton Walker & Owen PLLC
301 East Park Avenue
Charlotte, North Carolina 28202
Telephone: 704-338-1220
Facsimile:  704-338-1312
Email:  llargess@tinfulton.com

Christopher Brooke
American Civil Liberties Union of North Carolina Legal Foundation
P.O. Box 28004
Raleigh, North Carolina 27611
Telephone:  919-834-3466
Facsimile:  866-511-1344
Email:  cbrook@acluofnc.org

Brian Hauss
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY  10004
Telephone:  212-549-2604
Facsimile:  212-549-2652
Email:  bhauss@aclu.org

Elizabeth O. Gill
American Civil Liberties Union Foundation
39 Drumm Street
San Francisco, CA  94111

Telephone:  415-621-2493
Facsimile:  415-255-8437
Email:  egill@aclunc.org

This the 5th day of October 2017.

.

/s/ Meredith A. Pinson
Meredith A. Pinson (N.C. Bar No. 39990)