IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| LONNIE BILLARD,<br><br>*Plaintiff*,<br><br>v.<br><br>CHARLOTTE CATHOLIC HIGH SCHOOL,<br>MECKLENBURG AREA CATHOLIC<br>SCHOOLS, and ROMAN CATHOLIC<br>DIOCESE OF CHARLOTTE<br><br>*Defendants*. | Civil Action No. 3:17-cv-0011 |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

# ARGUMENT

In opposing Mr. Billard's motion for partial summary judgment, Defendants do not argue that there are any disputed material facts. Instead, Defendants repeat the same legal arguments they advanced in support of their own summary judgment motion. Mr. Billard thoroughly rebutted those arguments in his memorandum of law in opposition to summary judgment, and Mr. Billard incorporates that memorandum of law here, along with the following brief points:

***First***, despite the Diocese's claims to the contrary (Defs.' Opp'n 3-4), the Fourth Circuit has never held that Title VII does not apply to sex discrimination that could also be characterized as discrimination based on sexual orientation. To the contrary, the Fourth Circuit *rejected* that argument in *Wrightson v. Pizza Hut of America, Inc.*, 99 F.3d 138, 143 (4th Cir. 1996). Although the Diocese argues that the Fourth Circuit also addressed sexual orientation in *Hopkins v. Baltimore Gas & Electric Co.*, 77 F.3d 745, 751-52 (4th Cir. 1996) (cited by Defs.' Opp'n 4), that dicta is from a portion of Judge Niemeyer's opinion that was not joined by any other member of the panel. Discriminating against an employee because "he is a man who intended to, and did, marry another man," (Compl. ¶ 32; Answer ¶ 32) is discrimination on the basis of "sex" under Title VII, regardless of whether the discrimination could also be characterized as based on sexual orientation. *See* Pl.'s Mem. 11-12 (discussing *Wrightson*); Pl.'s Opp'n 3-4 (same).

***Second***, the Diocese cannot point to a single court decision holding that Section 702 immunizes religious employers from sex discrimination that is religiously motivated. *See* Defs.' Opp'n 8-11. All the Diocese's cases involved plaintiffs who sued for religious discrimination, *see Little v. Wuerl*, 929 F.2d 944, 951 (3d Cir. 1991); *Hall v. Baptist Memorial Health Care Corp.*, 215 F.3d 618 (6th Cir. 2000), or plaintiffs who alleged that a facially neutral policy was applied more harshly against women than against men, *see Maguire v. Marquette University*, 814

1

F.2d 1213, 1214-1215 (7th Cir. 1987); *Curay-Cramer v. Ursuline Academy of Wilmington, Delaware, Inc.*, 450 F.3d 130, 131 (3d Cir. 2006). Here, the Diocese admits that it explicitly discriminated against Mr. Billard because "he is a man who intended to, and did, marry another man," (Compl. ¶ 32; Answer ¶ 32). The policy, therefore, violates Title VII's prohibition on sex discrimination regardless of the Diocese's religious motivations. *See* Pl.'s Mem. 12-13; Pl.'s Opp'n 7-9.

**Third**, the Diocese cannot identify a single case supporting the proposition that the freedom of association provides a constitutional right to discriminate against non-ministerial employees on the basis of sex. *See* Defs.' Opp'n 11-14. When the "ministerial exception" is not implicated, all employers—whether secular or religious—do not have a First Amendment right to engage in employment discrimination. *See Hishon v. King & Spalding*, 467 U.S. 69, 78 (1984); Pl.'s Opp'n 9-10

If such a sweeping right existed, then the "ministerial exception" would be unnecessary because Title VII would not protect *any* employee, whether ministerial or not. The Fourth Circuit has repeatedly rejected that sort of sweeping exemption, explaining that "churches are not—and should not be—above the law," and "[t]heir employment decisions may be subject to Title VII scrutiny, where the decision does not involve the church's spiritual functions." *Rayburn v. Gen. Conference of Seventh-Day Adventists*, 772 F.2d 1164, 1171 (4th Cir. 1985). "Where no spiritual function is involved, the First Amendment does not stay the application of a generally applicable law such as Title VII to the religious employer unless Congress so provides." *EEOC v. Roman Catholic Diocese of Raleigh, N.C.*, 213 F.3d 795, 801 (4th Cir. 2000).

The "ministerial exception" was created in order to demarcate the line where a religious organization's First Amendment rights outweigh the government's compelling interest in

2

eradicating employment discrimination. *See Rayburn*, 772 F.2d at 1168-69. Having stipulated away any argument based on the "ministerial exception," the Diocese cannot redraw the First Amendment boundaries that have been carefully developed to distinguish between constitutional and unconstitutional applications of Title VII. *See* Pl.'s Mem. 14-15; Pl.'s Opp'n 9-10

   ***Fourth***, in arguing that the Religious Freedom Restoration Act ("RFRA") applies to suits between private parties (Defs.' Opp'n 16), the Diocese relies exclusively on *Hankins v. Lyght*, 441 F.3d 96 (2d Cir. 2006), which has been rejected by subsequent courts of appeals. *See Gen. Conference Corp. of Seventh-Day Adventists v. McGill*, 617 F.3d 402, 411 (6th Cir. 2010); *Tomic v. Catholic Diocese of Peoria*, 442 F.3d 1036, 1042 (7th Cir.2006). Attempting to minimize the rejection of *Hankins*, the Diocese notes that the Sixth Circuit distinguished *Hankins* by distinguishing between laws such as Title VII, which can be enforced by both private parties and the government, and laws such as the Lanham Act, which can be enforced *only* by private parties. *Gen. Conference Corp. of Seventh-Day*, 617 F.3d at 411. But the Sixth Circuit gave three separate reasons for rejecting *Hankins.* In addition to distinguishing between Title VII and the Lanham Act, the Sixth Circuit explained that "RFRA's text does not support the *Hankins* majority's interpretation," *id.*, and noted that "a different panel of the Second Circuit already has expressed 'doubts about *Hankins*'s determination that RFRA applies to actions between private parties'" and concluded that RFRA should not apply to purely private disputes "'regardless of whether the government is capable of enforcing the statute at issue,'" *id.* (quoting *Rweyemamu v. Cote*, 520 F.3d 198, 203 & n.2 (2d Cir. 2008)). *See* Pl.'s Mem. 14-15.

   ***Fifth***, even if RFRA did apply, the Diocese fails to properly apply RFRA's test, which provides that "Government may substantially burden a person's exercise of religion" when "application of the burden to the person . . . is in furtherance of a compelling governmental

3

interest; and . . . is the least restrictive means of furthering that compelling governmental interest." 42. U.S.C. § 2000bb-1(b).

The Diocese argues that there is no compelling governmental interest in applying Title VII to the non-ministerial employees at a religiously affiliated school. Defs.' Opp'n 19-20. But the Fourth Circuit has already rejected that argument—twice—in cases decided under the strict-scrutiny test that RFRA codified into law. In *Rayburn*, the Fourth Circuit explained that "[a]s Title VII is an interest of the highest order, courts have held that Title VII properly applied to the secular employment decisions of a religious institution, such as those relating to a secular teacher in a church-approved school." 772 F.2d at 1169 (internal quotation marks and citation omitted). And in *Dole v. Shenandoah Baptist Church*, the Fourth Circuit held that protecting non-ministerial employees from sex discrimination in church-affiliated schools is an interest "of the highest order" and "a less restrictive means of attaining its aims is not available." 899 F.2d 1389, 1398 (4th Cir. 1990). These cases make clear that there is indeed a compelling governmental interest in applying Title VII to "*these Defendants*" (Defs.' Opp'n 19) (emphasis in original), which collectively employee thousands of individuals. *See* Pl.'s Mem. 2-3, 15-16; Pl.'s Opp'n 11-12.

The Diocese also argues that applying Title VII is not the least restrictive means for advancing the governmental interest is protecting individuals from sex discrimination (Defs.' Opp'n 20), but the Diocese does not offer any less restrictive alternative that "equally furthers the Government's interest." *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 2786 (2014) (Kennedy, J., concurring). Indeed, the "ministerial exception" and Section 702, already ensure that Title VII is applied to religious organizations using the least restrictive means possible. As a result of the "ministerial exception," the Diocese already has complete freedom to hire and fire

4

employees who qualify for the "ministerial exception" without governmental interference. And, as a result of Section 702, Diocese already has freedom to hire and fire the rest of its employees without facing liability for discrimination based on religion. But when a religious employer decides to enter the commercial marketplace and hire non-ministerial employees to perform secular functions, the government has a compelling interest in protecting those employees from discrimination on the basis of sex, and Title VII is "precisely tailored to achieve that critical goal." *Hobby Lobby*, 134 S. Ct. at 2783.

## CONCLUSION

For all these reasons, the Mr. Billard's motion for partial summary judgment should be granted.

Dated: October 12, 2017

Respectfully submitted,

   /s/ Joshua A. Block

S. Luke Largess (NC Bar # 17486)
Tin Fulton Walker & Owen PLLC
301 East Park Avenue
Charlotte, NC 28202
Telephone: (704) 338-1220
Facsimile: (704) 338-1312

Christopher Brook (NC Bar #33838)
American Civil Liberties Union
of North Carolina Legal Foundation
PO Box 28004
Raleigh, NC 27611
Telephone: (919) 834-3466
Facsimile: (866) 511-1344

Joshua A. Block (*pro hac vice*)
Brian Hauss (*pro hac vice*)
American Civil Liberties Union
Foundation
125 Broad Street, 18th Floor
New York, NY 10004

5

Telephone: (212) 549-2604
Facsimile: (212) 549-2652

Elizabeth O. Gill (*pro hac vice*)
American Civil Liberties Union Foundation
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493
Facsimile: (415) 255-8437

*Counsel for Plaintiff*

# CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed a copy of forgoing document with the Clerk of Court using the CM/ECF system. All participants in the case are registered CM/ECF users and are hereby served through the CM/ECF system.

Dated: October 12, 2017

**/s/Joshua A. Block**
Joshua A. Block

7

Case 3:17-cv-00011-FDW-DCK   Document 34   Filed 10/12/17   Page 8 of 8