UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

Civil Action No. 3:17-cv-0011

| | |
|---|---|
| LONNIE BILLARD,<br><br>    Plaintiff,<br><br>v.<br><br>CHARLOTTE CATHOLIC HIGH SCHOOL, MECKLENBURG AREA CATHOLIC SCHOOLS, and ROMAN CATHOLIC DIOCESE OF CHARLOTTE,<br><br>    Defendants. | |

**DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**ARGUMENT**

I.  **Billard's Title VII Claim Fails.**

    A.  **Fourth Circuit Precedent Bars Billard's Claim.**

Billard asks the Court to ignore Fourth Circuit precedent and severely misconstrues *Wrightson v. Pizza Hut of America, Inc.*, 99 F.3d 138, 143 (4th Cir. 1996). *Wrightson* made clear that "Title VII does not afford a cause of action for discrimination based on sexual orientation," *id.* at 143, a position reaffirmed by district courts in this Circuit. *See e.g.*, *Barr v. Virginia Alcohol Bev. Control*, 2017 U.S. Dist. LEXIS 119136 at *10 (E.D. Va. July 28, 2017); *Dawkins v. Porter*, 2013 U.S. Dist. LEXIS 158818 at *6 (M.D.N.C. Nov. 6, 2013).

Contrary to Billard's contentions, the *Wrightson* court did not hold that a sexual orientation discrimination claim is actionable when brought with a sex discrimination claim; rather, that had the plaintiff alleged both that he was discriminated against because he was

1

heterosexual and was a male, his claim would have survived a Rule 12(b)(6) motion because sex need not be the **_sole_** cause of discrimination so long as it is **_a_** cause. *Id*. at 144. Here, there is no evidence that Defendants released Billard because he was male. Moreover, Billard claimed he was released because he is gay. Billard Dep. 176.

Billard's assertion that the Diocese's prohibition against public opposition to Catholic teaching "facially discriminates on the basis of sex" is likewise meritless, as it applies equally to men and women and regardless of sexual orientation. Ritter Decl. ¶¶ 23-24. And, contrary to Billard's assertion, the proper comparison is to women and heterosexuals. *Goode Cen. Va. Legal Aid Soc'y, Inc.*, 807 F.3d 619 (4th Cir. 2015) ( Title VII comparator is one who is similarly situated to the plaintiff by way of conduct and outside his class).

## B. Billard's Gender Non-Conformity Claim Fails.

Billard insists he can state a gender non-conformity claim based solely on his same-sex marriage. Billard is incorrect, as the Fourth Circuit has never recognized a gender-nonconformity claim based on an employee's same-sex marriage, as that is merely a claim for sexual orientation discrimination which is not actionable.

Billard's reliance on non-binding, out-of-circuit district court cases is misplaced. *Philpott v. New York*, 2017 U.S. Dist. LEXIS 67591 (S.D.N.Y. May 3, 2017) is contrary not only to Fourth Circuit precedent, but also to the Second Circuit's. *See Simonton v. Runyan*, 232 F.3d 33 (2d Cir. 2000) (affirming dismissal of sex-stereotyping claim based only on allegations concerning sexual orientation and where record offered no support that alleged harassment was based on plaintiff's "stereotypically feminine" behavior). As in *Simonton*, Billard's claim is based on sexual orientation, and there is no evidence that he behaved in a "stereotypical" manner. Billard Dep. 83 & 244-45; 279. *U.S. EEOC v. Scott Med. Health Ctr.*, P.C., 217 F.

Supp. 3d 834, 841 (W.D. Pa. 2016), also contrary to Fourth Circuit precedent, was decided only on a motion to dismiss.

Billard's only support for his gender non-conformity claim is that "I do not conform to the typical heterosexual relationship." Billard Dep. 279. This is a claim for sexual orientation discrimination and not actionable.

### C. Title VII's Exemptions Apply.

Billard concedes that Defendants' religious beliefs motivated their decision to release him, but asks the Court to focus *only* on his decision to style his claim as one for sex discrimination. Courts have rejected this type of form-over-substance approach, focusing on the *reason* for the employment decision to effectuate the purpose of the exemptions, which is to "enable religious organizations to create and maintain communities composed solely of individuals faithful to their doctrinal practices." *Little v Wuerl,* 929 F.2d 944, 951 (3d Cir. 1991).

For example, in *Curay-Cramer v. The Ursuline Academy of Wilmington, Delaware, Inc.*, 450 F.3d 130 (3d Cir. 2006), the court emphasized the purpose of Title VII's exemptions expressed in *Little* and affirmed dismissal of plaintiff's claim. *Id*. at 141-42. In doing so, the Court specifically noted that the plaintiff styled her claim as gender discrimination, rather than religious discrimination, was of no significance. *Id*. at 139. The Fourth Circuit employed the same reasoning in *Rayburn v. Seventh-Day Adventists*, 772 F.2d 1164, 1166 (4th Cir. 1985) acknowledging that the exemptions apply when the *reason* for the employment decision is based on religious preference. And, the court in *Kennedy v. St. Joseph's Ministries, Inc.*, 657 F.3d 189, 192 (4th Cir. 2011) reiterated that the exemptions include the right to terminate an employee whose conduct is inconsistent with the religious employer's beliefs. *Id*. Still further, the U.S.

3

Attorney General's Memorandum of October 6, 2017, interpreting Executive Order 13798, reaffirms that these exemptions apply **broadly** to exempt religious organizations, stating that religious schools may employ "only those willing to adhere to a code of conduct consistent with the precepts" of the religion with which the schools are affiliated. Exhibit A to Appendix, 6 & 12a.

Finally, Billard's decisions involving unequal-pay policies are equally unpersuasive, as *First Baptist Church*, *Shenandoah Baptist Church*, and *Tree Life Christian School* involved claims arising under the FLSA and the EPA. Moreover, each of these cases, as well as *Fremont Christian School*, involved markedly different facts from those presented here, because the employers maintained policies that applied differently to men and women. Here, had Billard been a ***female*** or a ***heterosexual*** and advocated for same-sex marriage, Defendants would have taken the same action. Ritter Decl. 23-24.

**II.     The First Amendment Bars Billard's Claim.**

    **A.     *Dale* Applies Here.**

Billard does not even discuss *Boy Scouts of America v. Dale*, 530 U.S. 640 (2000) but argues that the associational freedoms recognized in *Dale* and other cases can never apply in a Title VII case. This analysis is backwards, because it makes the scope of Defendants' ***constitutional*** freedom of association dependent on the reach of a ***statute***. As the Supreme Court in *Dale* made clear, a law that burdens private organizations' associational freedoms may be enforced only if it passes strict scrutiny, which Billard does not attempt to argue is satisfied.

Billard's cases do not support his inversion of the constitutional analysis. In *Hishon v. King & Spalding*, 467 U.S. 69 (1984), a female associate sued the law firm for sex discrimination when it failed to consider her for partnership. *Id.* at 71-72. The Supreme Court rejected the

4

firm's argument that the application of Title VII would infringe its associational freedoms because it failed to show how its ability "to make distinctive contribution . . . to the ideas and beliefs of our society" would be "inhibited by a requirement that it consider petitioner for partnership on her merits." *Id.* at 78. *Wisconsin v. Mitchell*, 508 U.S. 476 (1993) was a criminal case which cited *Hishon* to make the point that statutory punishment based on motive is not per-se unconstitutional. *Id.* at 487. In neither case did the Court conduct a strict scrutiny analysis (required by *Dale*) nor hold that employers, much less religious educational employers like Defendants, give up their associational freedoms by employing others as Billard contends.

Here, unlike in *Hishon*, forcing Defendants to employ Billard would directly inhibit Defendants' ability to convey Catholic teaching. Unless this intrusion on Defendants' associational freedoms satisfies strict scrutiny – and Billard does not argue that it does – Billard's claim fails. *Dale*, 530 U.S. at 653-61.

**B.    Billard's Claim Is Barred by the Church Autonomy Doctrine.**

Remarkably, Billard claims that the Church Autonomy Doctrine long recognized by the Supreme Court is confined to ministers where employment claims are concerned.

This argument cannot be squared with the Supreme Court's opinion in *Hosanna Tabor Evangelical Lutheran Church & School v. EEOC*, 565 U.S. 171 (2012), where the Court recognized the ministerial exception as simply one specific application of the rights of religious organizations to govern ecclesiastical matters. *Id.* at 185-88. *See also Gomez v. Evangelical Lutheran Church in Am.*, No. 1:07CV786, 2008 WL 3202925, at *6-7 (M.D.N.C. Aug. 7, 2008) (explaining the church autonomy doctrine and noting that ministerial exception is a related "corollary" principle).

5

*EEOC v. Roman Catholic Diocese of Raleigh, N.C.*, 213 F.3d 795, 801 (4th Cir. 2000) does not address the argument – much less hold – that a religious employer's only First Amendment defense to a Title VII claim is the ministerial exception. On the contrary, the language Billard quotes notes the truism, of no help here, that the ***ministerial*** exception applies to ***ministerial*** employees.

Billard also misapplies the holding of *Bryce v. Episcopal Church in the Diocese of Colorado*, 289 F.3d 648 (10th Cir. 2002). There, the court explained that when applying the Church Autonomy Doctrine, the first question is whether "the alleged misconduct is rooted in religious belief." *Id.* at 657 (citation omitted). Billard does not deny that Defendants' decision to release him was rooted in their religious beliefs.

Once this showing is met, courts examine whether the dispute "is an ecclesiastical one about discipline, faith, internal organization, or ecclesiastical rule, custom or law," and not a "purely secular dispute" with a third party. *Id.* (citation omitted). The undisputed evidence demonstrates that this prong is likewise met. Billard knew that CCHS employees are prohibited from advocating for or expressing positions contrary to the Catholic faith. Billard knew the Catholic Church teaches that marriage exists only between a man and a woman. Billard violated this policy through his public advocacy for same-sex marriage. This is plainly a dispute about "discipline, faith, internal organization, or ecclesiastical rule, custom or law" and is barred by the Church Autonomy Doctrine.

**III.     The Religious Freedom Restoration Act Bars Billard's Claim.**

Defendants explained RFRA's application in this case in their Memorandum in Opposition to Billard's Motion for Partial Summary Judgment and incorporate those arguments here. *See* Doc. 33 at 14-18.

Billard makes no effort to justify his claims under RFRA's framework. Under RFRA a person whose religious exercise is substantially burdened by a law is entitled to an exemption *unless* the Government "demonstrates that application of the burden to the person – (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." *Burwell v. Hobby Lobby Stores, Inc.*, 134 S.Ct. 2751, 2761 (2014) (citing 42 U.S.C. § 2000bb–1(b)). Billard does not argue, nor is there evidence in the record, that forcing Defendants to employ persons who publicly oppose core tenets of Catholicism and in imposing financial penalties on them for refusing to do so is the least restrictive means of advancing any governmental interest. Here, assuming that government did have a compelling interest as applied to Defendants (which would raise Establishment Clause concerns), the evidence fails to show that forcing Defendants to retain an employee who advocates for positions contrary to their religious belief is the least restrictive means of ending discrimination on the basis of sex. *See* Doc. 30 at 20-21; Doc 33 at 18-20.

Instead, Billard attempts to rewrite RFRA's requirements to place the burden on Defendants to offer a less restrictive means of satisfying a "to the person" governmental interest that Billard has not identified. RFRA places this burden on the government, not on Defendants. *See* 42 U.S.C. § 2000bb–1(b). *United States v. Wilgus*, 638 F.3d 1274 (10th Cir. 2011) specifically noted that "the government's burden [under the prong] is two-fold: *it must support its choice of regulation*, and it must refute the alternative schemes offered by the challenger, but it must do both through the evidence presented in the record." *Id*. at 1289.

In any event, the same less restrictive alternatives the Supreme Court recognized in *Burwell* are available here: the government can itself pay to vindicate its interests (perhaps by offering alternative employment) or accommodate entities with religious objections like

7

Defendants, who represent only a small fraction of employers – as Title VII *already does* without undermining the interests it was enacted to advance. *Burwell*, 134 S.Ct. at 2780-83. There is no evidence in the record to explain why these (or other alternatives) could not serve the government's interests here.

## **CERTIFICATE OF COMPLIANCE**

The undersigned counsel certify that the foregoing memorandum does not exceed 2,000 words.

This the 12th day of October 2017.

Respectfully submitted,

/s/ Meredith A. Pinson
John G. McDonald (N.C. Bar No. 23848)
jmcdonald@mcguirewoods.com
Joshua D. Davey (N.C. Bar No. 35246)
jdavey@mcguirewoods.com
Meredith A. Pinson (N.C. Bar No. 39990)
mpinson@mcguirewoods.com
MCGUIREWOODS LLP
201 North Tryon Street, Ste. 3000
Charlotte, North Carolina  28202
704.343.2276
704.444.8753 (Facsimile)

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the court using the CM/ECF system, which will send electronic notice to counsel for Plaintiff at the addresses as follows:

Joshua Block
American Civil Liberties Union
125 Broad Street, 18th Floor
New York, NY 10004-2400
Telephone: 212-549-2627
Facsimile: 212-549-2650
Email: jblock@aclu.org

S. Luke Largess
Tin Fulton Walker & Owen PLLC
301 East Park Avenue
Charlotte, North Carolina 28202
Telephone: 704-338-1220
Facsimile: 704-338-1312
Email: llargess@tinfulton.com

Christopher Brooke
American Civil Liberties Union of North Carolina Legal Foundation
P.O. Box 28004
Raleigh, North Carolina 27611
Telephone: 919-834-3466
Facsimile: 866-511-1344
Email: cbrook@acluofnc.org

Brian Hauss
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: 212-549-2604
Facsimile: 212-549-2652
Email: bhauss@aclu.org

Elizabeth O. Gill
American Civil Liberties Union Foundation
39 Drumm Street
San Francisco, CA 94111

Telephone: 415-621-2493
Facsimile: 415-255-8437
Email: egill@aclunc.org

This the 12th day of October 2017.

.

                                    /s/ Meredith A. Pinson
                                    Meredith A. Pinson (N.C. Bar No. 39990)