IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| LONNIE BILLARD,<br><br>*Plaintiff*,<br><br>v.<br><br>CHARLOTTE CATHOLIC HIGH SCHOOL, MECKLENBURG AREA CATHOLIC SCHOOLS, and ROMAN CATHOLIC DIOCESE OF CHARLOTTE,<br><br>*Defendants*. | **Civil Action No. 3:17-cv-0011** |

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF LAW
IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AND IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Pursuant to this Court's order dated July 16, 2020 (ECF No. 61), Plaintiff Lonnie Billard submits this supplemental memorandum of law regarding the recent rulings in *Bostock v. Clayton Cty., Georgia*, 140 S. Ct. 1731 (2020); *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049 (2020); and *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367 (2020), both in further support of Plaintiff's Motion for Partial Summary Judgment (ECF No. 26) and in opposition to Defendants' Motion for Summary Judgment (ECF No. 29).

**INTRODUCTION**

Plaintiff Lonnie Billard taught drama at Charlotte Catholic High School for more than a decade and continued to work as a substitute teacher after retirement. Defendants have stipulated

1

that the "ministerial exception" to Title VII coverage does not apply to Mr. Billard, and the undisputed evidence establishes that he was a purely secular employee with no religious job duties or functions. *See* Stipulation, ECF No. 28-1; Pl.'s Mem. in Support of Summary Judgment, ECF No. 27 at 4. It is also undisputed that, after Mr. Billard decided to marry his long-time partner, Defendants fired him "because he is a man who intended to, and did, marry another man." Compl. ¶ 32, ECF No. 1; Answer ¶ 32, ECF No. 8.

The Supreme Court's decision in *Bostock v. Clayton Cty., Georgia*, 140 S. Ct. 1731 (2020), establishes unequivocally that Defendants fired Mr. Billiard "because of [his] sex" in violation of the plain terms of Title VII. 42 U.S.C. § 2000e-2(a)(1). *Bostock* did not resolve whether a religious employer might have a viable statutory or constitutional defense to Title VII claims of sexual orientation discrimination, but several members of the Court discussed the scope of various defenses to Title VII claims in the majority, concurring, and dissenting opinions in *Bostock*, 140 S. Ct. 1731; *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049 (2020); and *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367 (2020). Far from supporting Defendants' assertions that, despite violating Title VII, they were justified in discriminating against Mr. Billard, those various opinions all support Plaintiff's argument that none of Defendants' asserted defenses apply to the facts of this case.

For these reasons, more fully described below, and for the reasons set forth in Plaintiff's previous submissions, Mr. Billard's motion for partial summary judgment with respect to Defendants' liability should be granted, and Defendants' motion for summary judgment should be denied.

## I. *Bostock* Confirms Mr. Billard's Claim that Defendants Fired Him Because of His Sex and Violated Title VII.

*Bostock* makes clear that when Defendants fired Mr. Billard because he is a man who married another man, Defendants violated Title VII's prohibition against firing or refusing to hire "any individual. . . because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). That is because, as the Supreme Court explained in *Bostock*, "it is impossible to discriminate against a person for being homosexual or transgender without discriminating against that individual based on sex." 140 S. Ct. at 1741.

> Consider, for example, an employer with two employees, both of whom are attracted to men. The two individuals are, to the employer's mind, materially identical in all respects, except that one is a man and the other a woman. If the employer fires the male employee for no reason other than the fact he is attracted to men, the employer discriminates against him for traits or actions it tolerates in his female colleague. . . . [T]he individual employee's sex plays an unmistakable and impermissible role in the discharge decision.

*Id.* at 1741-42. That is exactly what happened here. Defendants admit that they fired Mr. Billard "because he is a man who intended to, and did, marry another man." Compl. ¶ 32, ECF No. 1; Answer ¶ 32, ECF No. 8. The fact that Mr. Billard is a man and not a woman thus played "an unmistakable and impermissible role in the discharge decision." *Bostock*, 140 S. Ct. at 1741-42. *See* EEOC, *What You Should Know: The EEOC and Protections for LGBT Workers* (June 30, 2020), https://www.eeoc.gov/laws/guidance/what-you-should-know-eeoc-and-protections-lgbt-workers (explaining that, under *Bostock*, "if an employer fires an employee because she is a woman who is married to a woman, but would not do the same to a man married to a woman, the employer is taking an action because of the employee's sex because the action would not have taken place but for the employee being a woman").

*Bostock* also makes clear that Defendants' religious motivations for firing Mr. Billard do not transform their actions from discrimination on the basis of sex to discrimination on the basis

of religion. To the contrary, "intentional discrimination based on sex violates Title VII, even if it is intended only as a means to achieving the employer's ultimate goal." *Bostock*, 140 S. Ct. at 1742; *cf. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., UAW v. Johnson Controls, Inc.*, 499 U.S. 187, 199 (1991) ("Whether an employment practice involves disparate treatment through explicit facial discrimination does not depend on why the employer discriminates but rather on the explicit terms of the discrimination.").

In their prior summary judgment briefing, Defendants have attempted to reframe their decision to fire Mr. Billard as based on his *advocacy* against the Church's teachings on marriage on Facebook, as opposed to his *conduct* in marrying a same-sex partner. Defs.' Opp'n, ECF No. 33, at 6. But these assertions are contradicted by Defendants' admissions in their Answer to the Complaint and in their responses to Plaintiff's requests for admission that Mr. Billard's so-called "advocacy" against the Church's teachings consisted entirely of his "persisting in a same-sex civil marriage." *See* Answer ¶ 32, ECF No. 8 (admitting that Defendants fired Mr. Billard "because he is a man who intended to, and did, marry another man"); Defs.' Resp. to Req. for Admis. No. 3, ECF No. 32-2 at 2 ("Plaintiff's continuing public engagement in and advocacy for conduct opposed to the fundamental moral tenets of the Roman Catholic faith— ***specifically, persisting in a same-sex civil marriage*** —renders him ineligible for any substitute teaching assignments.") (emphasis added)). That is, his *act* of marrying his long-time partner was his sole statement of "advocacy."

Defendants cannot avoid Title VII's proscriptions by attempting to relabel Mr. Billard's announcement of his engagement to friends on Facebook as "advocacy." Had Mr. Billard been a woman who posted on Facebook that she was getting married to Mr. Billard's husband, Defendants would not have construed her engagement announcement to friends as "advocacy" of

4

against the Church's teachings. It is impossible to label a person's engagement announcement as "advocacy" against the Church's teachings about marriage without discriminating based on the sex of the employee who is announcing their engagement. And when an employee's sex is a "but for" cause of the employer's decision, "it's irrelevant what an employer might call its discriminatory practice, how others might label it, or what else might motivate." *Bostock*, 140 S. Ct. at 1744.

In any event, there is no evidence in the record supporting Defendants' assertion that Defendants would have fired Mr. Billard or any other employee simply for posting a Facebook message in support of a same-sex couple's marriage. To the contrary, the undisputed evidence showed that Defendants would ***not*** have fired someone for simply posting a positive Facebook message about a same-sex couple's marriage. Telford Dep. Tr. 23:24, ECF No. 28-5 (testifying that that he would only have asked such an employee to talk to a priest). It was the act of marrying that caused Mr. Billard's termination.

## II. *Bostock*, *Our Lady of Guadalupe*, and *Little Sisters* Confirm that None of Defendants' Statutory or Constitutional Defenses Apply Here.

### A. Section 702

Defendants have claimed in prior briefing that Section 702 of Title VII provides them a statutory exemption for engaging in sex discrimination that is religiously motivated. Defs.' Opp'n, ECF No. 33, at 8-11. But Section 702 merely allows religious employers to discriminate "with respect to the employment of individuals of a particular religion." 42 U.S.C.A. § 2000e-1(a). It does not authorize discrimination based on sex.

The recent Supreme Court decisions confirm that Section 702 does not provide a defense to Defendants' discrimination against Mr. Billard. In his *Bostock* dissent, Justice Alito recognized that the Fourth Circuit and other lower courts have interpreted Section 702 to provide

5

"only narrow protection" that does not allow a religious employer to discriminate based on sex. 140 S. Ct. at 1781 & n.55 (Alito, J., dissenting) (citing *Rayburn v. Seventh–Day Adventists*, 772 F.2d 1164, 1166 (4th Cir. 1985)). Under the Fourth Circuit's controlling precedent, Section 702 provides an exception *only* from Title VII's prohibition against discrimination in employment on the basis of religion; 702 "does not exempt religious organizations from Title VII's provisions barring discrimination on the basis of race, gender, or national origin." *Kennedy v. St. Joseph's Ministries, Inc.*, 657 F.3d 189, 192 (4th Cir. 2011); *accord Rayburn*, 772 F.2d at 1166 ("While the language of § 702 makes clear that religious institutions may base relevant hiring decisions upon religious preferences, Title VII does not confer upon religious organizations a license to make those same decisions on the basis of race, sex, or national origin.").

As discussed in Plaintiff's previous submissions, and noted by Justice Alito, the Fourth Circuit's interpretation of Section 702 in *Rayburn* and *Kennedy* is consistent with the interpretations of every court that has addressed this question.[1] Defendants fail to cite any case to the contrary. Instead, all of the authority cited by Defendants involved plaintiffs who sued for religious discrimination (and not sex discrimination),[2] or plaintiffs who were fired or denied

---

[1] *See, e.g.*, *Boyd v. Harding Academy of Memphis, Inc.*, 88 F.3d 410, 413 (6th Cir. 1996) (Section 702 "merely indicates that such institutions may choose to employ members of their own religion without fear of being charged with religious discrimination. Title VII still applies, however, to a religious institution charged with sex discrimination."); *accord EEOC v. Fremont Christian Sch.*, 781 F.2d 1362, 1366 (9th Cir. 1986); *EEOC v. Pac. Press Publ'g Ass'n*, 676 F.2d 1272, 1276 (9th Cir. 1982); *Herx v. Diocese of Fort Wayne-South Bend Inc.*, 48 F. Supp. 3d 1168, 1175-76 (N.D. Ind. 2014); *Vigars v. Valley Christian Ctr.*., 805 F. Supp. 802, 807 (N.D. Cal. 1992).

[2] *See Hall v. Baptist Mem'l Health Care Corp.*, 215 F.3d 618, 625 (6th Cir. 2000) (employee fired for joining church that accepted gay people could not sue for religious discrimination); *Little v. Wuerl*, 929 F.2d 944, 951 (3d Cir. 1991) (employee fired for remarrying without obtaining annulment cannot sue for religious discrimination).

6

Case 3:17-cv-00011-MOC-DCK   Document 62   Filed 08/07/20   Page 6 of 14

employment because of their views about abortion (and not because they were women who opposed abortion instead of men who opposed abortion).³ Defendants' claim that Section 702 authorizes them to facially discriminate on the basis of race, sex, or national origin lacks any support.

B.     **Church Autonomy**

As noted, Defendants have stipulated that Mr. Billard's job was non-ministerial for purposes of the ministerial exception to Title VII. *See* Stipulation, ECF No. 28-1. Even if Defendants had not entered into that stipulation, however, the Supreme Court's recent decisions would confirm that Mr. Billard was not a ministerial employee. In *Our Lady of Guadalupe*, the Supreme Court held that the ministerial exception extends to "teachers at religious schools who are entrusted with the responsibility of instructing their students in the faith." 140 S. Ct. at 2055. The undisputed evidence here shows that Mr. Billard was a purely secular teacher who provided ***no*** religious instruction. *See* Pl.'s Mem. in Support of Summary Judgment, ECF No. 27 at 4. Indeed, the school administration prefers and expects that secular teachers like Mr. Billard avoid discussing Catholic doctrine and leave those discussions to the teachers of religious subjects. Telford Dep. Tr. 28:2-15, ECF No. 28-5.

As Justice Alito further recognized in his *Bostock* dissent, the ministerial exception does not apply to teachers like Mr. Billard even when they play visible roles in the school community. 140 S. Ct. at 1781 (Alito, J., dissenting) ("Two cases now pending before the Court present the

---

³ *See Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 141-42 (3d Cir. 2006) (employee who was fired because of her beliefs about abortion alleged she was punished more harshly than men who opposed religious teachings on different issues such as the Iraq war); *Maguire v. Marquette Univ.*, 814 F.2d 1213, 1218 (7th Cir. 1987) (plaintiff who was not hired because of her beliefs about abortion failed to show she would have been hired if she were a man).

7

question whether teachers who provide religious instruction can be considered to be 'ministers.' But even if teachers with those responsibilities qualify, what about other very visible school employees who may not qualify for the ministerial exception?") (footnote omitted); *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 204 (2012) (Alito, J., concurring) (recognizing that "a purely secular teacher would not qualify for the 'ministerial' exception").

Defendants nevertheless have asserted in prior briefing that the "church autonomy" doctrine provides a broader right to fire employees based on sex regardless of whether those employees serve in a ministerial position. Defs.' Reply, ECF No. 35, at 5-6. The Fourth Circuit says otherwise: "Where no spiritual function is involved, the First Amendment does not stay the application of a generally applicable law such as Title VII to the religious employer unless Congress so provides." *EEOC v. Roman Catholic Diocese of Raleigh, N.C.*, 213 F.3d 795, 801 (4th Cir. 2000); *accord Little Sisters of the Poor*, 140 S. Ct. at 2397 23 n.1 (2020) (Kagan, J., concurring in the judgment) (explaining that in the context of employment discrimination, "[t]here is no general constitutional immunity, over and above the ministerial exception, that can protect a religious institution from the law's operation"). By stipulating that the ministerial exception did not apply, Defendants admitted that Mr. Billard did not hold a position that implicates principles of church autonomy. *See Our Lady of Guadalupe*, 140 S. Ct. at 2060 (explaining that "a component of [church] autonomy is the selection of the individuals *who play certain key roles*") (emphasis added). A substitute teacher of secular subjects is not in a "key role" for purposes of church autonomy.[4]

---

[4] Defendants rely on *Bryce v. Episcopal Church in the Diocese of Colorado*, 289 F.3d 648, 659 (10th Cir. 2002), but the question in that case was not whether defendants could fire a non-

### C. The Religious Freedom Restoration Act.

In *Bostock*, the majority opinion noted that the Religious Freedom Restoration Act ("RFRA") "*might* supersede Title VII's commands in appropriate cases," leaving that question open "for future cases." 140 S. Ct. at 1754 (emphasis added). But for all the reasons set forth in Plaintiff's previous submissions, RFRA does not provide a viable defense here.

*First*, RFRA is inapplicable because "[t]he plain language [of the statute] is clear that RFRA only applies when the government is a party." *Listecki v. Official Comm. of Unsecured Creditors*, 780 F.3d 731, 737 (7th Cir. 2015); *accord Gen. Conf. Corp. of Seventh-Day Adventists v. McGill*, 617 F.3d 402, 411 (6th Cir. 2010); *Tomic v. Catholic Diocese of Peoria*, 442 F.3d 1036, 1042 (7th Cir. 2006). And even if the statutory language were ambiguous enough to justify an inquiry into it, RFRA's legislative history is exclusively focused on cases and claims in which the government is a party to a proceeding. *Listecki*, 780 F.3d at 737.[5]

---

ministerial employee in violation of Title VII. That question was not before the court because, as a "youth pastor," the plaintiff in *Bryce* was a ministerial employee who could not challenge the church's decision to terminate her employment. *See Bryce v. Episcopal Church in the Diocese of Colorado*, 121 F. Supp. 2d 1327, 1341-42 (D. Colo. 2000). Because she could not challenge her termination, the plaintiff instead attempted to challenge the church's speech as form of sexual harassment. *Id*. at 1342. Specifically, the plaintiff argued that the church's "offensive and harassing statements about homosexuals," created a hostile work environment. *Bryce*, 289 F.3d at 657. In response, the Tenth Circuit held that the church's speech about its own religious doctrine was protected by the church autonomy doctrine. That holding has no bearing on this case because Mr. Billard is not challenging Defendants' speech about homosexuality; he challenges the Defendants' actions in firing him.

[5] Defendants rely on *Hankins v. Lyght*, 441 F.3d 96 (2d Cir. 2006), but that decision has been rejected by other circuits, and even by subsequent panels of the Second Circuit itself. *See Rweyemamu v. Cote*, 520 F.3d 198, 203 & n.2 (2d Cir. 2008) (expressing "doubts about *Hankin*s's determination that RFRA applies to actions between private parties" and concluding that RFRA should not apply to purely private disputes "regardless of whether the government is capable of enforcing the statute at issue").

Defendants make a policy argument that "limiting RFRA's application only to suits in which the government is a formal party to the action would lead to the perverse outcome in employment discrimination cases where RFRA's applicability would turn on whether the EEOC, which has the power to enforce Title VII, elected to bring suit itself or sought to intervene." Defs.' Opp'n, ECF No. 33, at 15. But *Bostock* makes clear that courts may not disregard a statute's plain text based on disapproval of allegedly "undesirable policy consequences." *Bostock*, 140 S. Ct. at 1753. "[C]ontentions about what . . . the law was meant to do, or should do, [do not] allow us to ignore the law as it is." *Id*. at 1745. If Defendants believe that the plain text of RFRA leads to a "perverse outcome," their remedy lies with Congress.

*Second*, even if RFRA applied to this case, Mr. Billard's claims easily satisfy RFRA's test because Title VII is narrowly tailored to serve the government's compelling interest in protecting employees from discrimination based on sex. Defendants have argued previously that even if there is a compelling governmental interest in prohibiting employment discrimination based on sex, there is no compelling governmental interest in applying Title VII's prohibitions specifically to the non-ministerial employees of a religiously affiliated school. Defs.' Opp'n, ECF No. 33, at 19-20. But the Fourth Circuit has already rejected that argument—twice—in cases decided under the strict-scrutiny test that RFRA codified into law.

In *Rayburn*, the Fourth Circuit explained that "[a]s Title VII is an interest of the highest order, courts have held that Title VII properly applied to the secular employment decisions of a religious institution, such as those relating to a secular teacher in a church-approved school." 772 F.2d at 1169. And in *Dole v. Shenandoah Baptist Church*, the Fourth Circuit held that protecting non-ministerial employees from sex discrimination in church-affiliated schools is an interest "of

10

the highest order" and "a less restrictive means of attaining its aims is not available." 899 F.2d 1389, 1398 (4th Cir. 1990). This Court, and these Defendants, are bound by those decisions.

As in *Rayburn* and *Dole*, Mr. Billard's right to be free from sex discrimination in employment under Title VII is a compelling interest of the highest order. *See EEOC v. R.G. & G.R. Harris Funeral Homes, Inc.*, 884 F.3d 560, 593 (6th Cir. 2018) ("The undisputed record demonstrates that Stephens has been and would be harmed by the Funeral Home's discriminatory practices in this case, and the [government] has a compelling interest in eradicating and remedying such discrimination."); *cf. Masterpiece Cakeshop, Ltd. v. Colorado Civ. Rights Comm'n*, 138 S. Ct. 1719, 1727 (2018) ("[T]he laws and the Constitution can, and in some instances must, protect [same-sex couples] in the exercise of their civil rights. The exercise of their freedom on terms equal to others must be given great weight and respect by the courts.").

Defendants also argue that, under *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014), applying Title VII is not the least restrictive means for advancing the governmental interest of protecting individuals from sex discrimination. *See* Defs.' Opp'n, ECF No. 33, at 19-20. But—unlike the plaintiffs in *Hobby Lobby*—Defendants do not propose any less restrictive alternative that "equally furthers the Government's interest" in protecting Mr. Billard from sex discrimination. 573 U.S. at 738 (Kennedy, J., concurring); *accord id*. at 693 (majority opinion) (explaining that, under the less restrictive alternatives, the negative impact on Hobby Lobby's employees "would be precisely zero"). Defendants simply argue that their free exercise interests automatically trump the government's compelling interests in protecting Mr. Billard from discrimination.

RFRA does not provide Defendants such blanket immunity or "hoist automatically [Defendants'] religious interests above other compelling governmental concerns." *Harris*

11

*Funeral Homes*, 884 F.3d at 593. Rather, when the government's interests are compelling and its actions are narrowly tailored to those interests, RFRA specifically recognizes that "government *may* substantially burden a person's exercise of religion." 42 U.S.C.A § 2000bb–1(b) (emphasis added). Defendants have complete freedom to hire and fire ministerial employees, and to hire and fire employees without facing liability for religious discrimination under Section 702, but when they opt to enter the commercial marketplace to hire non-ministerial employees to perform purely secular functions, then Congress has a compelling interest in protecting each and every one of those employees from discrimination on the basis of sex, and Title VII is "precisely tailored to achieve that critical goal." *Hobby Lobby*, 573 U.S. at 733.

## CONCLUSION

For all these reasons—and for the reasons discussed in Plaintiff's previous submissions—Plaintiff's motion for partial summary judgment should be granted, and Defendants' motion for summary judgment should be denied.

Dated: August 7, 2020              Respectfully submitted,

                                   /s/  Joshua A. Block

                                   S. Luke Largess (NC Bar # 17486)
                                   Tin Fulton Walker & Owen PLLC
                                   301 East Park Avenue
                                   Charlotte, NC 28202
                                   Telephone: (704) 338-1220
                                   Facsimile: (704) 338-1312

                                   Irena Como (NC Bar #51812)
                                   American Civil Liberties Union
                                   of North Carolina Legal Foundation
                                   PO Box 28004
                                   Raleigh, NC 27611
                                   Telephone: (919) 834-3466
                                   Facsimile: (866) 511-1344

Joshua A. Block (*pro hac vice*)
Brian Hauss (*pro hac vice*)
American Civil Liberties Union
Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2604
Facsimile: (212) 549-2652

Elizabeth O. Gill (*pro hac vice*)
American Civil Liberties Union
Foundation
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493
Facsimile: (415) 255-8437

*Counsel for Plaintiff*

13

Case 3:17-cv-00011-MOC-DCK   Document 62   Filed 08/07/20   Page 13 of 14

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed a copy of forgoing document with the Clerk of Court using the CM/ECF system. All participants in the case are registered CM/ECF users and are hereby served through the CM/ECF system.

Dated: August 7, 2020

**/s/Joshua A. Block**
Joshua A. Block

14

Case 3:17-cv-00011-MOC-DCK   Document 62   Filed 08/07/20   Page 14 of 14