IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| LONNIE BILLARD,<br><br> *Plaintiff*,<br><br>v.<br><br>CHARLOTTE CATHOLIC HIGH SCHOOL, MECKLENBURG AREA CATHOLIC SCHOOLS, and ROMAN CATHOLIC DIOCESE OF CHARLOTTE,<br><br> *Defendants*. | Civil Action No. 3:17-cv-0011 |

**PLAINTIFF'S SUPPLEMENTAL REPLY
IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AND IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff submits this Reply to Defendants' Supplemental Brief, ECF No. 63

**ARGUMENT**

**I.      Defendants Discriminated Against Mr. Billard on the Basis of His Sex.**

Defendants have made a binding admission that they fired Mr. Billard "because he is a man who intended to, and did, marry another man." Answer ¶ 32, ECF No. 8. This admission conclusively establishes that Mr. Billard's sex was a "but for" cause of his firing. That is all that is necessary to establish sex discrimination under Title VII.[1]

Defendants argue that Mr. Billard was treated the same as a heterosexual man who was fired for adultery and a heterosexual woman who was fired for marrying a divorced Catholic man. Defs.' Supp. 4, ECF No. 63. But firing an employee for adultery or for marrying a divorced Catholic does not require Defendants to treat those employees in a manner that, but for their sex, would have been different. By contrast, in firing Mr. Billard because he is a *man* who married a man, Defendants treated him differently from a *woman* who marries a man. Defendants' "ultimate goal might be to" enforce the Church's moral teachings, "[b]ut to achieve that purpose the employer must, along the way, intentionally treat an employee worse based in part on that individual's sex." *Bostock v. Clayton Cty., Georgia*, 140 S. Ct. 1731, 1742 (2020).

Defendants cannot avoid Title VII by saying they fired Mr. Billard for announcing his engagement on Facebook. If Mr. Billard were a woman who announced her engagement to a man on Facebook, she would not have been fired. Whether he was fired for *being* a man who married a man or for *announcing* his plan to marry a man, Mr. Billard's sex played "an unmistakable and impermissible role in the discharge decision." *Bostock*, 140 S. Ct. at 1741-42.

---

[1] "It is well-established that . . . admissions in the pleadings are binding on the parties and may support summary judgment against the party making such admissions." *Having Bright v. QSP, Inc.,* 20 F.3d 1300, 1305 (4th Cir. 1994) (internal quotation marks omitted).

Defendants' supplemental brief asserts that Defendants would have fired Mr. Billard "if he were a woman who had opposed Catholic teaching on marriage on Facebook." Defs.' Supp. 6, ECF No. 63. But Defendants admit the only reason they label Mr. Billard's Facebook post as "opposition" to Catholic teaching is because he is a man who announced his engagement to another man. *See* Ritter Decl. ¶19, ECF No. 31-3 ("Mr. Billard's announcement of his engagement to a same-sex partner violated the policies to which he was subject as a substitute teacher at CCHS because the announcement opposed fundamental moral tenets of Catholic faith concerning marriage."). Labelling Mr. Billard's engagement announcement to friends as "opposition" does not change the fact that Billard's sex was a "but for" cause of his termination.

## II. None of Defendants' Statutory or Constitutional Defenses Provides a Right to Discriminate Against a Non-Ministerial Employee on the Basis of Sex.

Defendants claim an unprecedented and unlimited right to discriminate against non-ministerial employees on the basis of sex, race, or national original if they have a religious motive for doing so. Every court to consider that question—including the Fourth Circuit—has rejected such a claim. This Court should do so as well.

**Section 702.** Section 702 of Title VII allows religious organizations to discriminate based on their religious beliefs as long as those religious beliefs do not require discrimination based on sex, race, or national origin. Defendants fail to cite a single case holding that Section 702 allows religious employers to discriminate on the basis of sex if they have religious motivations. *See* Pl.'s Supp Br. 6-7, ECF No. 62 (discussing cases cited by Defendants).

2

Case 3:17-cv-00011-MOC-DCK   Document 65   Filed 08/14/20   Page 3 of 8

**Church Autonomy.** Because Mr. Billard was a non-ministerial employee, his employment does not implicate "church autonomy.[2]" Defendants again fail to identify any case holding that "church autonomy" provides a First Amendment right to fire non-ministerial employees on the basis of sex.[3] "[Ch]urches are not—and should not be—above the law. Like any other person or organization . . . . [t]heir employment decisions may be subject to Title VII scrutiny, where the decision does not involve the church's spiritual functions." *Rayburn v. Gen. Conference of Seventh-Day Adventists*, 772 F.2d 1164, 1171 (4th Cir. 1985).

**RFRA.** RFRA applies only when the "government" burdens religion. Defendants assert that even though the government is not a party to this case, this Court is the "government" for purpose of RFRA. Defs.' Supp. 10, ECF No. 63. But the statute also requires the "government" to "demonstrate[] that application of the burden to the person" survives strict scrutiny, and the statute defines "demonstrates" as "meets the burdens of going forward with the evidence and of persuasion." 42 U.S.C.A. §§ 2000bb-1(b), 2000bb-2(3). Only a litigant can do that. *See Listecki v. Official Comm. of Unsecured Creditors*, 780 F.3d 731, 736 (7th Cir. 2015) ("It is self-evident

---

[2] There is no "assuming" that Mr. Billard was a non-ministerial employee. Defs.' Supp Br. 17, ECF No. 63. To avoid a Rule 30(b)(6) deposition on the topic, Defendants stipulated that Mr. Billard is not a ministerial employee. ECF No. 28-1. Stipulations are "formal concessions that have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." *Christian Legal Soc. Chapter of the Univ. of Cal., Hastings Coll. of the Law v. Martinez*, 561 U.S. 661, 677-78 (2010) (ellipses omitted).

[3] In *Bryce v. Episcopal Church in the Diocese of Colo.*, 289 F.3d 648, 657 (10th Cir. 2002), and *Demkovich v. St. Andrew the Apostle Par.*, 343 F. Supp. 3d 772, 776 (N.D. Ill. 2018), the plaintiffs were ministerial employees who could not challenge their termination and instead attempted to challenge their employers' speech about their religious beliefs as creating a hostile work environment. The plaintiff in *Garrick v. Moody Bible Inst.*, 412 F. Supp. 3d 859, 871 (N.D. Ill., Sept. 25, 2019), alleged a hostile work environment and retaliation for her advocacy for women in the ministry, not differential treatment on the basis of sex. None of those cases suggests that a religious employer has a right under "church autonomy" to take "a tangible employment action" against a non-ministerial employee based on the employee's sex. *Demkovich.*, 343 F. Supp. 3d at 778.

3

that the government cannot meet its burden if it is not party to the suit."); *Gen. Conference Corp. of Seventh-Day Adventists v. McGill*, 617 F.3d 402, 410 (6th Cir. 2010) ("Where, as here, the government is not a party, it cannot 'go[ ] forward' with any evidence.").

Even if RFRA applied, there is a compelling interest in protecting Mr. Billard from employment discrimination on the basis of sex. Defendants assert that RFRA's "to the person" standard, "requires [the court] to loo[k] beyond broadly formulated interests and to scrutiniz[e]" whether those compelling interests would actually be harmed by "granting specific exemptions to particular religious claimants." Defs.' Supp. Br. 14, ECF No. 62. But the undisputed evidence shows that Defendants' discrimination *did* cause harm in this case. The firing "was devastating" to Mr. Billard and took away "a great deal of [his] personal identity and sense of self-worth." Billard Decl. ¶ 56, ECF No. 28-2. There is a compelling interest in preventing that "stigmatizing injury, and the denial of equal opportunities that accompanies it." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 625 (1984); *see EEOC v. R.G. &. G.R. Harris Funeral Homes, Inc.,* 884 F.3d 560, 593 (6th Cir. 2018). By contrast, the harm to employees by granting an exemption in *Burwell v. Hobby Lobby Stores, Inc*., was "precisely zero." 573 U.S. 682, 693 (2014).

Defendants' argument that Title VII is not narrowly tailored to address this compelling interest ignores the Supreme Court's assurance in *Hobby Lobby* that Tile VII and other laws prohibiting employment discrimination are "precisely tailored to achieve [their] critical goal." *Id.* at 733.  RFRA provides "no such shield" for "discrimination in hiring" to "be cloaked as religious practice." *Id.*

**Expressive Association.** The Supreme Court has already "rejected the argument that Title VII infringed employers' First Amendment rights." *Wisconsin v. Mitchell*, 508 U.S. 476, 487 (1993). Defendants nevertheless make the untenable argument that *Boy Scouts of Am. v.*

4

*Dale*, 530 U.S. 640 (2000), provides them an "expressive association" right to discriminate in employment based on sex. Defs.' Supp. Br. 18-19, ECF No. 63. But *Dale* and other successful "expressive association" cases did not involve employment discrimination. They were public accommodation claims in which a plaintiff sought to be a member of an organization or an unpaid "volunteer Scout Leader." *Dale*, 530 U.S. at 652.

Hiring paid employees is commercial activity, not expressive association. "[T]here is only minimal constitutional protection of the freedom of commercial association," because "the State is free to impose any rational regulation on the commercial transaction itself." *Roberts*, 468 U.S. at 634 (O'Connor, J., concurring in part and concurring in judgment). "Once a contractual relationship of employment is established, the provisions of Title VII attach and govern certain aspects of that relationship." *Hishon v. King & Spalding*, 467 U.S. 69, 74 (1984).

In any event, even if an "expressive association" right existed in an employer-employee relationship, applying Title VII to this claim by a non-ministerial employee satisfies heightened scrutiny under the First Amendment for the same reason it satisfies such scrutiny under RFRA.

## CONCLUSION

Plaintiff's motion for partial summary judgment should be granted, and Defendants' motion for summary judgment should be denied.

Dated: August 14, 2020                    Respectfully submitted,

    /s/   Joshua A. Block

S. Luke Largess (NC Bar # 17486)
Tin Fulton Walker & Owen PLLC
301 East Park Avenue
Charlotte, NC 28202
Telephone: (704) 338-1220
Facsimile: (704) 338-1312

5

Irena Como (NC Bar #51812)
American Civil Liberties Union
of North Carolina Legal Foundation
PO Box 28004
Raleigh, NC 27611
Telephone: (919) 834-3466
Facsimile: (866) 511-1344

Joshua A. Block (*pro hac vice*)
Brian Hauss (*pro hac vice*)
American Civil Liberties Union
Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2604
Facsimile: (212) 549-2652

Elizabeth O. Gill (*pro hac vice*)
American Civil Liberties Union
Foundation
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493
Facsimile: (415) 255-8437

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically filed a copy of forgoing document with the Clerk of Court using the CM/ECF system. All participants in the case are registered CM/ECF users and are hereby served through the CM/ECF system.

Dated: August 14, 2020

**/s/Joshua A. Block**
Joshua A. Block